RECEIVED & FILED

UNITED STATES DISTRICT COURT 91 AUG 21 PM 3: 56

DISTRICT OF PUERTO RICO    CLERK S OFFICE
U S DISTRICT COURT
SAN JUAN PR

```
------------------------------------------------x
                                         |
UNITED STATES OF AMERICA,                |
                                         |
              Plaintiff,                 |    Civil Action No. 97-1442-DRD
                                         |
       v.                                |
                                         |
TROPICAL FRUIT, S.E.;                    |
AVSHALOM LUBIN;                          |
CESAR OTERO ACEVEDO; and                 |
PEDRO TOLEDO GONZALEZ,                   |
                                         |
              Defendants.                |
                                         |
------------------------------------------------x
```

## CONSENT DECREE

The United States of America ("United States"), on behalf of the Administrator of the United

States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to the

Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., and the

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.

§ 9601, et seq. against Tropical Fruit, S.E. ("Tropical Fruit"), and  Avshalom Lubin, Cesar Otero

Acevedo, and Pedro Toledo Gonzalez, for violations of FIFRA at an agricultural facility located at

Road No. 335, KM 7.2, Rural Zone Boca, Guayanilla, Puerto Rico (hereinafter the "Farm"), and

noncompliance with EPA Administrative Order Index No. II-CERCLA-97-0301 issued pursuant to

Section 106 of CERCLA, 42 U.S.C. § 9606.

As alleged in the United States' complaint, in 1996 and 1997, Defendants regularly applied



91

pesticides, including pesticides that are or contain hazardous substances, such as Malathion, Supracide-2E, Captan 50, Dithane F-45, and Kocide to agricultural crops, including mango, banana and plantain trees, located on the Farm in such a manner that the pesticides or hazardous substances drifted or otherwise migrated beyond the boundaries of Defendants' Farm in contravention of the pesticide label requirements. During this same period Defendants applied certain pesticides and hazardous substances improperly to certain types of fruits, and failed to properly protect workers by, among other things, failing to post required warning signs, failing to provide required decontamination supplies, and failing to provide proper protective clothing and equipment to farm workers.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607 and 9613(b). For the purposes of this Consent Decree this Court has personal jurisdiction over Tropical Fruit, S.E., Cesar Otero Acevedo, Pedro Toledo Gonzalez and Avshalom Lubin ("Settling Defendants"). Each Settling Defendant waives all objections and defenses that each may have to jurisdiction of the Court or to venue in this District and shall not challenge the entry of this Consent Decree as an order of the Court or this Court's jurisdiction to enter and enforce this Consent Decree. Settling Defendants also agree not to contest the validity of this Consent Decree.

Settling Defendants' agreement to this Consent Decree is not an acknowledgment or agreement that the facts alleged herein are true or an admission of liability and Settling Defendants' agreement to this Consent Decree shall not be used as evidence in support of such factual allegations in any proceeding against Settling Defendants.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

2

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

Compliance with Laws, Regulations and Label Requirements

1.      Settling Defendants shall at all times hereinafter strictly comply with: (1) the environmental laws of the United States and Puerto Rico, including, but not limited to, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; (2) regulations promulgated pursuant to such environmental laws; (3) the label requirements of all pesticides  and hazardous substances applied, stored or used at the Farm; and (4) this Consent Decree.  Where used in this Consent Decree, the term "hazardous substance" shall have the meaning set forth in Section 101(14) of CERCLA.  Where used in this Consent Decree, the term "pesticide" shall have the meaning set forth in Section 2(u) of FIFRA, 7 U.S.C. § 136(u), which includes, but is not limited to, fungicides, insecticides, and rodenticides.  In the event of a conflict between the requirements of this Consent Decree and the requirements of any of the above mentioned laws, labels or regulations, the Farm shall comply with the more stringent of the two requirements.

2.      Settling Defendants shall make it a condition of employment that all employees of Tropical Fruit and any other individuals doing work on or for the Farm shall at all times comply with this Consent Decree and with all laws of the United States and Puerto Rico, regulations and label requirements regarding the use, storage, application and disposal of pesticides, hazardous substances and their containers.

3.      Settling Defendants shall employ all reasonably available measures in order to avoid contact, either directly or through drift, of pesticides or pesticide residue to workers or other persons.

3

Reasonably available measures shall include, but are not limited to: all requirements of this Consent Decree with respect to pesticide use, handling and storage at the Farm; foliage/vegetation buffers in sectors of the Farm bordering the adjacent community as set forth herein; types of application and monitoring equipment and calibration thereof.

4.     Notwithstanding any other provision of this Consent Decree, Settling Defendants shall not spray any pesticides and hazardous substances at the Farm in such a manner that the pesticides or hazardous substances may drift or otherwise migrate beyond the boundaries of the Farm. This prohibition applies regardless of the method or location of the spraying and the wind conditions. Based upon the particular facts and circumstances concerning pesticide application practices at the Farm, as described herein and known to EPA as of the date of signature by EPA of this Consent Decree, EPA has concluded that applications of pesticides performed at the Farm in strict accordance with the requirements of this Consent Decree will not be in violation of FIFRA § 12(a)(2)(G) as it relates to spray drift from pesticides.

Buffer Zone Perimeter

5.     Distances for various provisions of this injunctive relief shall be based on distances measured from a Buffer Zone Perimeter baseline which is included as Attachment 1 hereto and described as follows. Unless otherwise noted herein, all distances for the Buffer Zone Perimeter shall be measured starting at a baseline from a generally southwestern to northeastern direction as follows:

A.     Beginning at the fenceline or the property boundary, if no more than ten feet from the current fenceline, at the southwestern edge of Sector 2 at the point on the fenceline or property boundary due west from the westernmost tree in row 87;

4

B.      Proceeding north along the fenceline to the northwestern edge of Sector 2 at the fenceline due west from the westernmost tree in row 62;

C.      Proceeding west along the fenceline at the southern edge of row 61 within Sector 1 to the top of the berm at the Rio Yauco;

D.      Proceeding northeast along the top of the southern berm of the Rio Yauco at the western and northern edges of Sectors 1, 3, 5, and 7 to the point where the Rio Yauco begins flowing between Sector 7 and Vega Sector 1;

E.      Proceeding northeast along the fenceline at the northeastern edge of Vega Sector 1;

F.      Proceeding northeast along the fenceline at the northwestern edge of Vega Sector 4 from the entrance gate of the farm along Route 335 to the point where the fenceline begins running due east; and,

G.      Proceeding east along the fenceline at the northern edge of Vega Sector 4 to the easternmost point on the fenceline which is due south from the easternmost residential area north of Vega Sector 4.

Measurements from the Buffer Zone Perimeter begin at this baseline and are measured from the baseline, perpendicularly inward towards the interior of the Farm in a general easterly or southerly direction, e.g., from the fenceline at the western edge of Sector 2 inward towards Central San Francisco.

The Outer Vegetative Barrier

6.      The Farm must establish a vegetative barrier, on Farm property, along the perimeter of

5

Farm Sectors 1, 2, 3, 5, 7 and Vega Sector 1 (hereinafter the "Buffer Zone Perimeter"). This outer

vegetative barrier (the "Outer Vegetative Barrier") shall consist of neem trees planted in a single row,

approximately every 7 feet along the Buffer Zone Perimeter. Where the border of the Farm is the

Yauco River, the trees shall be planted below and on the south side of the berm on the south side of the

Yauco. Where the border of the Farm is not the Yauco River, the trees shall be planted at or

immediately within the fenceline of the Farm. The trees constituting the Outer Vegetative Barrier shall

be at least 1.5 feet in height when planted, staked for support when planted, drip irrigated, and

replaced as necessary to preserve a consistent row, and ultimately maintained at a height of

approximately thirty feet. No pesticides or hazardous substances shall be applied by airblast or hand-

spray application to these trees. The Farm shall remove any mango trees or other vegetation

necessary to permit the planting and maintenance of the Outer Vegetative Barrier.


The Inner Vegetative Barrier

7.    A second, inner row of neem trees (the "Inner Vegetative Barrier") shall be planted

along the entire Buffer Zone Perimeter of Buffer Zone Segments A & D (as defined below) parallel to

and fifteen feet from the Outer Vegetative Barrier, measured from the Outer Vegetative Barrier toward

the interior of the Farm. The neem trees comprising the Inner Vegetative Barrier shall be planted

approximately every 7 feet along this row. The two rows of neem trees shall be planted in a staggered

configuration. The trees constituting the Inner Vegetative Barrier shall be at least 1.5 feet in height

when planted, staked for support when planted, drip irrigated, and replaced as necessary to preserve a

consistent row, and ultimately maintained at a height of approximately thirty feet. No pesticides or

hazardous substances shall be applied by airblast or hand-spray application to these trees. The Farm

6

shall relocate or remove any mango trees or other vegetation necessary to permit the planting and

maintenance of the Inner Vegetative Barrier.

Buffer Zone

8.      Settling Defendants shall establish a 173 foot wide buffer zone along the Buffer Zone

Perimeter of Buffer Zone Segments A - D, as defined below, within which no mechanized application

of pesticides or hazardous substances shall occur.  In Buffer Zone Segments E and F, as defined below,

a No-Spray Zone shall be established as set forth below (Buffer Zones Segments A - F are hereinafter

collectively referred as to the "Buffer Zone").

9.      Settling Defendants shall post and maintain highly visible markers at least  4 feet high

and spaced no more than 50 feet apart along the inner boundaries of the Buffer Zone.

No-Spray Zone

10.     Settling Defendants shall establish a no-spray buffer zone of varying width (hereinafter,

the "No-Spray Zone") along  the Buffer Zone Perimeter, within which no pesticides or hazardous

substances will be applied by airblast or hand-spray application, or any other method that delivers

pesticides through the air.  Herbicides associated with the planting and maintenance of plantains may be

ground-applied using Solo back sprayers or the equivalent.

11.     Settling Defendants shall post and maintain highly visible markers at least 4 feet high and

spaced no more than 50 feet apart along the inner boundaries of the No-Spray Zone, with additional

markers identifying points where the width of the No-Spray Zone changes, as set forth below.

12.     The width of the No-Spray Zone shall be as follows (see map attached hereto as

7

Attachment 1):

   A. <u>Buffer Zone Segment A</u>: Buffer Zone Segment A shall be that portion of the

Buffer Zone which begins at the Southwest starting point of the Buffer Zone Perimeter at row 87 and

ends at the point along the Buffer Zone Perimeter at row 72.  In Buffer Zone Segment A, the No-Spray

Zone shall be 173 feet wide.

   B. <u>Buffer Zone Segment B</u>: Buffer Zone Segment B shall be that portion of the

Buffer Zone that runs from the northernmost point of Buffer Zone Segment A (the point along the Buffer

Zone Perimeter at row 72) to the point along the Buffer Zone Perimeter due west of the westernmost

tree in row 61. In Buffer Zone Segment B, the No-Spray Zone shall be 75 feet wide.

   C. <u>Buffer Zone Segment C</u>: Buffer Zone Segment C shall be that portion of the

Buffer Zone that runs from the westernmost point of Buffer Zone Segment B (the point along the Buffer

Zone Perimeter due west of the westernmost tree in row 61) to the point along the Buffer Zone

Perimeter due west of the westernmost tree in row 39.  In Buffer Zone Segment C, the No-Spray Zone

shall be 50 feet wide.

   D. <u>Buffer Zone Segment D</u>: Buffer Zone Segment D shall be that portion of the

Buffer Zone that runs from the easternmost point of Buffer Zone Segment C (the point along the Buffer

Zone Perimeter due west of the westernmost tree in row 39) to the point along the Buffer Zone

Perimeter at the northeastern edge of Sector 7.  In Buffer Zone Sector D, the No-Spray Zone shall be

173 feet wide.  Where rows of trees are parallel to the Buffer Zone Perimeter, no more than five rows

of mango trees shall be relocated or removed from the No-Spray Zone.

   E. <u>Buffer Zone Segment E</u>: Buffer Zone Segment E shall be that portion of the

Buffer Zone that runs from the easternmost pont of Buffer Zone Segment D to the easternmost point of

Vega Sector 1 and consists of all the Buffer Zone Perimeter adjacent to Vega Sector 1. Buffer Zone Segment E shall consist of a No-Spray Zone which shall be 50 feet wide.

        F.     <u>Buffer Zone Segment F</u>: Buffer Zone Segment F shall be that portion of the Buffer Zone that runs from the westernmost point of the Buffer Zone Perimeter in Vega 4 at the entrance gate to the easternmost point of the Buffer Zone Perimeter in the northeastern corner of Vega Sector 4. Buffer Zone Segment F shall consist of a No-Spray Zone which shall be 125 feet wide.

        13.     Settling Defendants shall post and maintain highly visible markers at least 4 feet high and spaced no more than 50 feet apart along the inner boundaries of the No-Spray Zone.

<u>Hand-Spray Zone</u>

        14.     In Buffer Zone Segments A - D, the Hand-Spray Zone shall consist of that portion of each segment of the Buffer Zone between the inner boundary of the No-Spray Zone and the inner boundary of the Buffer Zone. In the Hand-Spray Zone, pesticides may be applied, via hand-spraying, and subject to all other limitations contained herein regarding the application of pesticides generally, and subject also to the hand-spraying specifications set forth in Attachment 2. The frequency of hand-spraying, shall not exceed the frequency undertaken by the Farm for the three years prior to entry of this Decree as evidenced by the spray records submitted to EPA for this period, unless prior written approval is received from EPA. The type of pesticides applied by hand spraying, shall likewise be limited to those approved by EPA for application to that crop within the three years prior to the entry of this Decree unless prior written approval is received from EPA.

<u>Relocation or Removal of Trees</u>

9

15.    As set forth at Paragraphs 6 and 7 above, the Settling Defendants agree to relocate or remove mango trees, banana plants, and other vegetation to the extent necessary to plant the Inner and Outer Vegetative Barriers. In addition to these trees, the Settling Defendants agree to relocate or remove all banana plants and mango trees from the No-Spray zone.

16. Settling Defendants further agree to replace the removed crops with plantains in the No-Spray zone. No pesticides or fertilizers shall be applied to the plantains by hand-spraying or airblast application. Herbicides associated with the planting and maintenance of plantains may be ground-applied using Solo back sprayers or the equivalent.

Work Plan

17.    Within 30 days of the entry of this Consent Decree, Settling Defendants shall submit to EPA a Work Plan setting forth the manner in which the Farm will implement the buffer zone and vegetative barrier provisions of this consent decree. Such Work Plan shall include the following sequence of implementation: (i) immediate planting of the Outer Vegetative Barrier; (ii) planting of the Inner Vegetative Barrier as soon as is practicable; (iii) relocation of all mango trees within the No-Spray Zone as soon as is practicable in coordination with the growth of the vegetative barrier as provided in this paragraph. The Work Plan shall provide for a phased approach for the relocation of mango trees within the No-Spray Zone, beginning 30 days after the approval by EPA of the Work Plan, which coordinates such relocation with the growth of the Inner and Outer Vegetative Barriers. The Work Plan shall provide for a period of implementation that shall not exceed three years from the date of entry of this Consent Decree provided that by the end of three years, the neem trees comprising the Inner and Outer Vegetative Barriers, in the determination of EPA, have attained the height of

approximately 30 feet. The Work Plan shall coordinate the relocation or removal of mango trees with the attainment of average neem tree heights of 15, 22, and 30 feet. The Work Plan shall provide for the implementation of the upgrade of the anemometer, as required herein, within 30 days of approval by EPA of the Work Plan.

18.    During the implementation of the Work Plan, but in no event to exceed three years from the date of entry of this Consent Decree, hand spraying will be allowed within the No-Spray Zone subject to all limitations on hand spraying contained in this Consent Decree.


Land Use Restrictions

19.    The Settling Defendants hereby certify that the Farm is the owner of the piece of property adjacent to Buffer Zone Segments B - D, known as the "cow pasture" and the strip of land immediately to the east of the cow pasture up to but not including the westernmost of the residences adjacent to Buffer Zone Segment D. Settling Defendants agree to place deed restrictions on this property sufficient to ensure that it will only be used for agricultural activities that do not require the application of pesticides or fertilizers through airblast or hand-spray application  so long as the Farm continues to operate as a farm. This deed restriction or restrictions shall be submitted to EPA for its review and approval within 90  days of entry of this Consent Decree and shall be properly recorded pursuant to the laws of the Commonwealth of Puerto Rico within 30 days of receipt of EPA's approval of the proposed restrictions.

20.    Settling Defendants agree that those portions of Vega Sectors 1 and 4 which lie within the Buffer Zone shall only be used for the cultivation of bananas and plantains and no other crop shall be grown there without the prior written approval of EPA. Settling Defendants agree to place deed

11

restrictions on the portions of Vega Sectors 1 and 4 which lie within the Buffer Zone to ensure that no crop other than bananas and plantains shall be grown in this portion of the Farm unless a written proposal for replanting with another crop is submitted to EPA and approved in writing by the Agency. This deed restriction or restrictions shall be submitted to EPA for its review and approval within 90 days of entry of this Consent Decree and shall be properly recorded pursuant to the laws of the Commonwealth of Puerto Rico within 30 days of receipt of EPA's approval of the proposed restrictions.

General Provisions Concerning Spraying of Pesticides

21.    The "Smart Sprayer" is prohibited for use in Sectors 1-8 of the Farm. Settling Defendants may utilize other power spraying equipment for application of pesticides and hazardous substances in areas of the Farm other than the Buffer Zone. Such power spraying equipment must comply with the specifications set forth in Attachment 2.

22.    All application specifications specified in this Consent Decree and the Attachments thereto are all subject to the following proviso: If the label requirements for the given pesticide or hazardous substance specify more restrictive application practices or greater buffer zones in order for the pesticide or hazardous substance to be applied properly, then such label requirement shall control.

23.    Pesticides containing Methidathion shall not be used at any time within Sectors 1-8, inclusive, or Vega 1, 3, and 4 at the Farm.

Unregistered Pesticides

24.    Settling Defendants shall not import, purchase, store, or use at any time any pesticide or hazardous substance that is not registered with EPA and the Puerto Rico Department of Agriculture

12

and specifically authorized for application to a crop being grown by the Farm. Settling Defendants shall within 30 days of the date of entry of this Consent Decree 1) inform EPA in writing of the presence of any unregistered pesticides at the facility, and 2) dispose of any unregistered pesticides as hazardous wastes pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq. and related regulations. Settling Defendants shall within 15 days of the disposal of any such unregistered pesticides, provide written evidence to EPA that such disposal has taken place. Notification required by this paragraph shall be provided to the EPA addressees identified in Paragraph 55, below.

Pesticide and Hazardous Substance Application

25.     Appended as Attachment 3 is the list of approved pesticides. Any deviation from this approved list must have prior written approval from EPA.

26.     The application of all pesticides and hazardous substances in Sectors 1 through 8 inclusive and Vega 1, 3 and 4 of the Farm shall occur only when 10-minute average wind speeds are between 2 and 6 mph. If, at any time, 10-minute average wind speeds drop below 2 mph or exceed 6 mph in these sectors, pesticide and hazardous substance application shall immediately stop until 10-minute average wind speeds are between 2 and 6 mph inclusive.

27.     The application of all pesticides and hazardous substances in all sectors of the Farm, except in Sectors 1 through 8, inclusive and Vega 1, 3 and 4, shall occur only when 10-minute average wind speeds are between 2 mph and 10 mph inclusive. If at any time 10-minute average wind speeds drop below 2 mph or exceed 10 mph in sectors other than sectors 1 through 8, inclusive and Vega 1, 3 and 4, pesticide and hazardous substance application shall immediately cease until the 10-minute average wind speeds are between 2 and 10 mph.

13

28.    The references to "2 mph" in the preceding paragraphs are all subject to the following proviso: If the label requirements for the given pesticide or hazardous substance specify a minimum wind speed of greater than 2 mph (for example, 3 mph) in order for the pesticide or hazardous substance to be applied, then such label requirement shall control.

29.    Immediately prior to and during all pesticide and hazardous substance applications at the Farm, wind speed and direction must be measured to assure that wind speed restrictions in this Consent Decree are not exceeded. Such measurements shall be taken and recorded by an anemometer approved by EPA, which automatically and permanently records the wind speed, wind direction, and the date and time of these measurements. Within thirty days of the entry of this Consent Decree, Settling Defendants shall purchase and use a new anemometer, in addition to or in place of the anemometer currently in use by the Farm. The new anemometer shall be mounted on a pole at an appropriate height above the tops of the mango trees. The anemometer shall be located within a circle, 350 meters in radius, centered on the intersection of sectors 5, 8, 6 and 9, and provide a clear line of sight to the packing plant. The specifications of the required anemometer are set forth in Attachment 4.

30.    The approved anemometer shall be capable of, and shall be operated to provide, wireless communication to a computer which shall contemporaneously and permanently record wind speed and direction and other data.

31.    The anemometer shall be capable of providing, and shall be operated to provide, wireless communication with the tractor operator applying pesticides to communicate wind speed exceedances while operating at the Farm. A sound and light alarm shall be mounted on the tractor pulling the spraying device so as to be audible and visible to the operator, and a sound and light alarm shall be positioned so as to be audible and visible to individuals performing hand spraying, and activated

14

automatically by the anemometer, which shall signal the operator that a wind speed exceedance has

occurred and application must cease until wind speeds are within the required range of 2 - 6 miles per

hour in sectors 1 through 8, inclusive and Vega 1, 3 and 4, or within the required range for the area

being sprayed.  In the event that the anemometer becomes fully or partially inoperative during an

application, Settling Defendant shall immediately cease spraying and notify EPA's Tropical Fruit hotline

at 787-402-2337, unit #401-6547.  Any notification provided pursuant to this paragraph also shall be

provided in writing to the EPA-Region 2, Caribbean Environmental Protection Division.  Such notice

shall set out the reason(s) for the interruption and propose a schedule for reinstallation or reactivation of

the required equipment.  Upon receipt and review of such notice, EPA shall then set a reasonable

deadline for reinstallation or reactivation of the required equipment.

      32.     A drift retardant and pesticide adherent approved by the United States for use at the

Farm shall be used for all pesticide and hazardous substance applications at the Farm.

      33.     Settling Defendants shall not aim pesticide spray above the tops of Farm crops.

      34.     Mango trees at the Farm shall be maintained at a height no greater than 18 feet.

      35.     During all airblast applications, tractor and tower sprayer speeds must be maintained

between 2 and 2.5 miles per hour.  The airblast sprayer must be turned off at the end of each row of

crops.

      36.     In Sectors 1 through 8, inclusive, and Vega 1, 3, and 4, pesticide applications,

whether airblast, hand-spray, or some combination thereof, shall be limited to a period of no more than

6 hours of continuous application, followed by 24 hours within which no pesticides or hazardous

substances are applied with airblast or hand-spray equipment to the same section of the Farm.  Each 6

hour period shall be divided into two applications of no more than three hours each.  During each 6

hour period, the two separate applications shall take place in two distinct sector Groups, as follows: Sectors 1, 3, and 5 form Group 1. Sectors 2, 4 and 6 form Group 2. Sectors 7, 8, Vega 1, Vega 3, and Vega 4 form Group 3. Each such separate application shall employ either one Tower Blower or one power-assisted hand sprayer (with a maximum of two nozzles), as described in Attachment 2, but not both simultaneously.

37.     Airblast and hand-spray applications within each sector should begin in the farm rows furthest from residences or public thoroughfares and end in the rows nearest to residences and public thoroughfares.

38.     Pesticides shall only be applied to the outer row of crops nearest the No-Spray Buffer Zones by spraying inward, toward the center of the Farm.

39.     Within 30 days of entry of this Consent Decree, the Farm shall fund, in the amount of $10,000 per year, an individual, approved by EPA, to monitor the Farm's compliance with the hand-spray provisions of this Consent Decree (hereinafter, the "Monitor") for a period of three years, or until such time as the vegetative buffer/neem trees reach a height of approximately thirty feet, as determined by EPA, whichever is sooner. The Monitor shall have full access, as necessary to perform the activities described in this paragraph, to all parts of the Farm and buildings thereon at all times when any employee or partner is present on the Farm to observe whether the requirements of this Consent Decree pertaining to Sectors 1 1, 2, 3, 5 and 7 are being adhered to. The Monitor will be approved by the United States and shall report to EPA, with copies to the Puerto Rico Environmental Quality Board, and the Puerto Rico Department of Agriculture, on the Farm's compliance with this Consent Decree. For purposes of Paragraph 49, below, the Monitor shall be a designated representative of EPA. No hand-spray applications of pesticides shall occur, in the above-referenced sectors, during the period in which the Monitor is required to be in place, without the presence of the Monitor. Should the Settling Defendants determine that for whatever reason, a temporary interruption in the employment

16

or availability of the monitor becomes necessary, then Settling Defendants shall immediately give written notice of that determination to the EPA addressees identified in Paragraph 55, below. Such notice shall set out the reason(s) for the interruption and propose a schedule for re-employment of a monitor. Upon receipt and review of such notice, EPA shall then set a reasonable deadline for re-employment of the monitor.

<u>Project Coordinator</u>

40.     Settling Defendants shall select a Project Coordinator and no more than two alternates. Settling Defendants shall  submit the proposed Project Coordinator's name, address, telephone number, and qualifications to EPA. The Project Coordinator shall be responsible for overseeing the Settling Defendants' compliance with the requirements of this Consent Decree. The Project Coordinator or an alternate shall be present at the Farm during all times that pesticides or hazardous substances are sprayed at the Farm. The Project Coordinator shall have technical expertise sufficient to adequately oversee Settling Defendants' compliance with all requirements of this Consent Decree. EPA retains the right to disapprove of any Project Coordinator or alternate(s) proposed by Settling Defendants. If EPA disapproves of a proposed Project Coordinator or alternate(s), Settling Defendants shall propose a different Project Coordinator or alternate(s) and shall notify EPA of that person's name, address, telephone number, and qualifications within seven days following EPA's disapproval. Receipt by Settling Defendants' approved Project Coordinator of any notice or communication from EPA relating to this Consent Decree shall constitute receipt by Settling Defendants. Settling Defendants may change their Project Coordinator or alternate(s), subject to approval by EPA as set forth in this paragraph. Settling Defendants shall notify EPA at least seven

17

days before such a change is made.  The initial notification may be  made orally but it shall be promptly

followed by a written notice.  Settling Defendant's Project Coordinator shall be available to meet with

EPA at EPA's request.

## Notice of Applications

41.    Notice of all applications including pesticides and fertilizer within Sectors 1 through 8

inclusive and Vega 1, 3 and 4 shall be made to EPA - Region 2, Caribbean Environmental Protection

Division, at least 72 hours prior to a planned application using the form attached as Attachment 5.

Changes in the identified dates and times for proposed applications due to weather conditions or other

reasons must be telefaxed and posted prior to such application utilizing the same form (Attachment 5).

The Farm shall notify EPA of changes in the identified dates and times for proposed applications

immediately after such changes are decided. At a minimum, notice of date changes must be telefaxed to

EPA  at least 24 hours prior to the amended application time.

42.    Settling Defendants shall, on the first day of each month, provide a written progress

report (Attachment 6) to EPA which shall, among other things, (a) identify each pesticide or fertilizer

that was sprayed at Settling Defendants' Farm during the previous month; (b) describe how the

pesticide or fertilizer was sprayed in accordance with this Consent Decree; (c) state the volume of each

pesticide or fertilizer that was sprayed at the Farm during the previous month; (d) identify the date(s)

and time(s) that each pesticide or fertilizer was sprayed at the Farm; (e) indicate where at the farm each

pesticide or fertilizer was sprayed and for how long at each location; and (f) identify all spraying

applications of pesticides  or fertilizers which are scheduled during the next month, including the date

and time of each scheduled application, and the location at the Farm where each pesticide or fertilizer is

scheduled to be sprayed.

43.    Settling Defendants shall cooperate with EPA in providing information to the public with
regard to Settling Defendants' compliance with this Consent Decree.


Storage

44.    Pesticides shall be stored at the Farm in a manner consistent with the label requirements
of each product.  Pesticides shall also be stored in a secure manner which will prevent unauthorized
access to material.  Flammables and oxidizers shall be stored separately from pesticides and separated
by a rated firewall if stored in the same building.  Storage shall minimize exposure to moisture and
excessive heat.  Unstable materials shall be stored in conditions which will minimize degradation.  The
storage area shall include a means for venting prior to personnel entering the storage area, and adequate
time given to personnel to vent the storage area prior to access.

45.    Pesticides not stored in their original containers, or in which the storage containers are
damaged shall be placed in containers for use consistent with the product's label or disposed of in
compliance with federal, state and local disposal requirements.  The interior of the storage area shall be
equipped with absorbent, a 55-gallon lined metal drum, a shovel, and personnel protection equipment
to allow personnel to clean up and dispose of any spilled material in the storage area.


Disposal

46.    The Settling Defendants shall strictly adhere to all disposal requirements for pesticides
and hazardous substances used or in the possession of Settling Defendants as required by federal or
state law, regulation or label, including, but not limited to, any containers with residues of pesticides and

hazardous substances.

## Worker Protection

47.     The Settling Defendants shall strictly adhere to all worker protection requirements for pesticides and hazardous substance use and application.  Such requirements include, but are not limited to, proper protective clothing, respirators, and decontamination facilities. Other requirements for worker protection required by Federal or Puerto Rico statute, regulation and labels must also be adhered to strictly.  No pesticide or hazardous substance application shall take place such that drift therefrom comes in contact with any employee who is not properly protected according to the worker protection requirements for the specific pesticide or hazardous substance.

48.     Settling Defendants shall ensure that any persons performing work on or for the Farm, including all new employees of Tropical Fruit and contract workers hired for the purpose of pesticide application, use, disposal, storage or mixing, shall receive proper instruction and training prior to participating in such operations.

## Government Access and Authority

49.     EPA, the Puerto Rico Department of Agriculture, the Puerto Rico Environmental Quality Board (The "Agencies") and their designated representatives, including, but not limited to, employees, agents, contractor(s) and consultant(s) thereof, shall have full access to all parts of the Farm and buildings thereon at all times when any employee or partner is present on the Farm to insure that the requirements of this Consent Decree are being adhered to.  The Agencies shall have access to,

among other things: (A) all records relating to Farm activities and may remove such records, including computer data, for up to 14 days for copying; and (B) all real property, equipment, facilities and supplies on the Farm. The Agencies shall be permitted to take samples of pesticides applied or scheduled to be applied at the Farm. Documents subject to the attorney-client or work product privilege shall be exempt from disclosure. Settling Defendants may assert a business confidentiality claim pursuant to 40 C.F.R. Part 2, Subpart B, but shall not withhold such documents from disclosure to the identified Agencies.

Record Retention, Documentation, Availability of Information

50.    Daily logs and anemometer records shall be maintained on Farm premises, identifying the time, date, and duration of application of pesticides and hazardous substances, the sector where applied, the wind speed and direction, the name and concentration of each pesticide or hazardous substance application, with the name of the person entering the information on the log.  Information on the daily logs must be entered contemporaneously with the spraying application.  Information on the daily logs shall not be erased or modified.  Anemometer data shall not be erased, modified, or deleted. In the event that an erroneous entry is made to a log, a notation in the log should be made without erasure or modification of the original entry.  All of the Farm's daily logs and anemometer records shall be retained for a minimum period of three years.

51.    With respect to each spraying of pesticides and fertilizers, Settling Defendants shall preserve all documents and information relating to Settling Defendants' implementation of the requirements of this Consent Decree for  three years after each spraying of a pesticide, fertilizer, or

other hazardous substance. At the end of the three year period, Settling Defendants shall notify EPA thirty days before any such document or information is destroyed that such documents and information are available for inspection. Upon request, Settling Defendants shall provide EPA with the originals or copies of such documents and information.

52.    All documents submitted by Settling Defendants to EPA in the course of implementing this Order shall be available to the public unless identified as confidential by Settling Defendants pursuant to 40 CFR Part 2, Subpart B, and determined by EPA to merit treatment as confidential business information in accordance with applicable law. In addition, EPA may release all such documents to PRDA and EQB, and PRDA and EQB may make those documents available to the public unless Settling Defendants claim a privilege consistent with applicable Commonwealth law and regulations regarding confidentiality. Settling Defendants shall not assert a claim of confidentiality regarding any monitoring or hydrogeologic data, any information specified under Section 104(e)(7)(F) of CERCLA, or any other chemical, scientific or engineering data relating to Settling Defendants' implementation of this Order.


Cessation of Pesticide Application

53.    Under this Consent Decree, EPA shall have the authority, in its sole discretion, to order in writing the immediate cessation of any pesticide and hazardous substance application activity for a period of three days. Under this paragraph, EPA shall not, however, order any such cessation without an adequate basis for concluding that a violation of this Consent Decree has occurred or the conduct of any of the Settling Defendants or its agents or employees may threaten the health or well-being of any

person or the environment.  The basis for any such cessation order shall be set forth in writing.  If Settling Defendants disagree with the basis for the cessation order, they may, while the cessation order is in force, submit the dispute to the Court for resolution.

Plans and Reports Requiring EPA Approval

54.    All reports and submissions required to be submitted to EPA pursuant to this Consent Decree shall be submitted subject to penalties of perjury.  Each person responsible for compiling the information to be submitted shall state, in English or Spanish, as follows:

> I have prepared, compiled and/or reviewed the information contained in this document or report and declare, subject to penalties of perjury, that to the best of my knowledge, the information contained herein is true and correct.

> Date:_____        _____
>                                         Signature

>                                         _____
>                                         Printed Name
> Yo he preparado, recopilado, y/o revisado la información    contenida en este documento o informe y declaro, so pena de perjurio, que la información contenida en este documento es cierta y correcta segun mi mejor conocimiento.

> Fecha                    _____
>                                         Firma

>                                         _____
>                                         Nombre

Notice

55.    All reports, work plans,  and notices required pursuant to this Consent Decree,

including Paragraphs 17, 24, 31, 39, 40-42, 51, and 68, shall be submitted in writing to the following addressees:

> Chief, Enforcement and Superfund Branch
> Caribbean Environmental Protection Division
> U.S. Environmental Protection Agency, Region II
> Centro Europa Building, Suite 417
> 1492 Ponce De Leon Avenue, Stop 22
> Santurce, PR 00907-4127

and

> Chief, Pesticides and Toxic Substances Branch
> Division of Enforcement and Compliance Assistance
> U.S. Environmental Protection Agency, Region II
> 2890 Woodbridge Ave., MS 105
> Edison, New Jersey    08837-3679

Payment of Penalty

56.    Settling Defendants shall pay $12,000 in settlement of all penalties that have accrued prior to the date of lodging of this Consent Decree with respect to any of the allegations in the United States' Complaint in this matter, and for all stipulated penalties that have accrued pursuant to the March 26, 1997 Interim Order on Consent in United States v. Tropical Fruit, S.E., Civ. No. 97-1442 (DRD), in accordance with the following schedule:

(a) $4,000 within 30 days of entry of this Consent Decree;

(b) $4,000 on or before October 1, 2002, plus Interest calculated from the date of entry of this Consent Decree; and

(c) $4,000 on or before October 1, 2003, plus Interest calculated from the date of entry of this Consent Decree.

(d) "Interest" shall mean interest at the current rate specified for interest on investments of the Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The appropriate interest rate for 2001 is 6.18%.

Payment of the penalty required by this paragraph shall be made in accordance with the payment instructions in Paragraph 58, below. The penalty, and the payment of Response Costs discussed below, are based on the United States' good faith reliance on financial information submitted to the United States prior to the lodging of this Decree.

Payment of CERCLA Response Costs

57.    Settling Defendants shall pay $23,000.00 to the EPA Hazardous Substance Superfund in reimbursement of all CERCLA response costs incurred in connection with this enforcement action and accrued as of the date of signing of this Consent Decree, in accordance with the following schedule:

(a) $7,500 within 30 days of entry of this Consent Decree;

(b) $7,500 on or before October 1, 2002, plus Interest calculated from the date of entry of this Consent Decree; and

(c) $8,000 on or before October 1, 2003, plus Interest calculated from the date of entry of this Consent Decree.

58.    Payment under Paragraphs 56 and 57 shall be made by Fedwire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USA File Number 1997-V-00377, EPA Region II and Site Spill ID Number

02JD, and DOJ Case Number 1-1700z. Payment shall be made in accordance with instructions

provided to Settling Defendants by the Financial Litigation Unit of the U.S. Attorney's Office for the

District of Puerto Rico following lodging of the Consent Decree. Any payments received by the

Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business day.

To ensure that Settling Defendants' payment is properly recorded, Settling Defendants shall send a

letter to the United States within one week of the EFT, which references the date of the EFT, the

payment amount, the name of the case, the case number, and Settling Defendants' names and

addresses. Such letter shall indicate that the payment is for penalties or CERCLA response costs.

Such letter shall be sent to:

> Chief, Financial Management Branch
> U.S. Environmental Protection Agency, Region II
> 290 Broadway, 29th floor
> New York, NY 10007-1866

and

> Chief, Waste and Toxic Substances Branch
> Office of Regional Counsel
> 290 Broadway, 16th Floor
> New York, NY 10007-1866

and

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, D.C. 20044
> Re: DOJ # 1-1700z

Failure to Comply -- Stipulated Penalty

59.    Upon written notice by the United States, each of the Settling Defendants shall be

jointly and severally liable to pay a stipulated penalty of $10,000 for each violation of this Consent

Decree. Each day of violation shall be considered a separate violation for purposes of this paragraph.

60.    Stipulated penalties are due and payable within 30 days of the date of the demand for

payment of the penalties by EPA. All payments to EPA under this Paragraph shall be made via EFT.

Payment shall be remitted via EFT to Mellon Bank, Pittsburgh, Pennsylvania, as follows: To make

payment via EFT, Settling Defendants shall provide the following information to its bank:

      A.  Amount of payment

      B.  Title of Mellon Bank account to receive the payment: EPA

      C.  Account code for Mellon Bank account receiving the payment: 9108544

      D.  Mellon Bank ABA Routing Number: 043000261

      E.  Names of Settling Defendants

      F.  Case number

      G.  Site/spill identifier:  02JD

Along with this information, Settling Defendants shall instruct their bank to remit payment in the required

amount via EFT to EPA's account with Mellon Bank. To ensure that Settling Defendants' payment is

properly recorded, Settling Defendants shall send a letter to the United States within one week of the

EFT, which references the date of the EFT, the payment amount, the name of the case, the case

number, and Settling Defendants' names and addresses. Such letter shall indicate that the payment is

for stipulated penalties. Such letter shall be sent to:

      Chief, Financial Management Branch

U.S. Environmental Protection Agency, Region II
290 Broadway, 29th floor
New York, NY  10007-1866

and

Chief, Waste and Toxic Substances Branch
Office of Regional Counsel
290 Broadway, 16th Floor
New York, NY 10007-1866

61.   Penalties shall accrue as provided in this Paragraph regardless of whether EPA has

notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon

demand.  All penalties shall begin to accrue on the day after complete performance is due or the day a

violation occurs, and shall continue to accrue through the final day of correction of the noncompliance

or completion of the activity.  Nothing herein shall prevent the simultaneous accrual of separate

penalties for separate violations of this Consent Decree.

62.   In the event that any payments required by this Consent Decree are not received when

due, in addition to stipulated penalties as provided herein, Interest shall continue to accrue on the

unpaid balance through the date of payment.

63.   If the United States brings an action to enforce this Consent Decree, Settling

Defendants shall reimburse the United States for all costs of such action, including but not limited to

costs of attorney time, as provided by law.

64.   Payments made under Paragraphs 58-59, above, shall be in addition to any other

remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to comply with the

requirements of this Consent Decree.

65.    Notwithstanding any other provision of this section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.

Parties Bound

66.    This Consent Decree applies to and is binding upon each of the Settling Defendants and their heirs, successors and assigns.  Any change in the ownership or partnership status of any of the Settling Defendants including, but not limited to, any transfer of assets or real or personal property of Tropical Fruit, S.E., shall not alter the responsibilities of any of the Settling Defendants under this Consent Decree until such time as EPA receives evidence, satisfactory to EPA, of the assumption of all of the obligations contained in this Consent Decree by the acquiring person or entity.  Each Settling Defendant is jointly and severally responsible for carrying out the requirements of this Consent Decree. Compliance by one or more Settling Defendants with any provision of this Consent Decree shall not excuse or justify violation or noncompliance by any other Settling Defendant.

Any Settling Defendant who is not possessed of an equity interest in the Farm at the time of his signature of this Consent Decree, however, shall be relieved of responsibility for the injunctive relief obligations of this Consent Decree upon the permanent cessation of his employment or other association with the Farm.

Successors

29

67.    Settling Defendants shall provide a copy of this Consent Decree to any prospective owners, operators, lessees, or successors-in-interest in the Farm at least fourteen (14) days before a controlling interest in any of a Settling Defendant's property rights, or stock is transferred, conveyed or assigned to the prospective owner, operator, lessee or successor.

68.    Not later than sixty (60) days prior to any transfer, conveyance or assignment by any Settling Defendant of any real property interest in any property included within the Farm, such Settling Defendant shall submit a true and correct copy of the applicable document(s) to EPA, and shall identify the transferee, conveyee, or assignee by name, principal business address, business telephone number, and proposed effective date of the transfer.

Release Notification

69.    Upon the occurrence of any event at Settling Defendants' Farm which, pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, requires reporting to the National Response Center (800) 424-8802. Settling Defendants also shall immediately orally notify the Chief of the Response and Prevention Branch of the Emergency and Remedial Response Division of EPA, Region II, at (732) 321-6656, or the EPA Region II Emergency 24-hour Hot Line at (732) 548-8730, of the incident or conditions at Settling Defendants' farm. Settling Defendants shall also submit a written report to EPA within seven days after the onset of such an event, setting forth the events that occurred and the measures taken or to be taken to mitigate any release or endangerment caused or threatened by the release and to prevent the reoccurrence of such a release. The reporting requirements of this paragraph are in addition to, and not in lieu of, the reporting requirements under CERCLA Section 103, 42

30

U.S.C. § 9603, and Section 304 of the Emergency Planning and Community Right-To-Know Act of 1986, 42 U.S.C. § 11004.

Covenant not to Sue and Reservations of Rights.

70.    In consideration of the actions that will be performed by Settling Defendants and penalties to be paid, the United States covenants not to sue or take administrative action against Defendants for civil violations of FIFRA, 7 U.S.C. § 136 et seq., and CERCLA, 42 U.S.C. § 9601, et seq., for response costs which were incurred prior to the date of lodging of this Consent Decree, or civil penalties or injunctive relief for violations of FIFRA or CERCLA which occurred prior to the date of lodging of this Consent Decree and which arose from the allegations set forth in the Complaint, and this action shall be dismissed with prejudice.  However, notwithstanding the foregoing and any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to: the right to seek additional or modified injunctive relief to protect any person or the environment, or to enforce the terms of this Consent Decree; the right to seek CERCLA response costs incurred on or after the date of lodging of this Consent Decree; the right to seek  civil penalties for violations of FIFRA or CERCLA which occur on or after the date of lodging of this Consent Decree, and any criminal liability of Settling Defendants.

71. Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Farm or this Consent Decree, including but not limited to:

A.  any direct or indirect claim for reimbursement from the Hazardous Substance

31

Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§

9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

   B. any claim arising out of response actions at the Farm for which Response Costs

were incurred;

   C. any claim against the United States pursuant to Sections 107 and 113 of CERCLA,

42 U.S.C. §§ 9607 and 9613, relating to Response Costs; and

   D. any claim under the United States Constitution, Commonwealth Constitution,

Tucker Act, 28 U.S.C. § 1491, or common law, arising out of or relating to past or future access to,

imposition of covenants, conditions, and restrictions on, or other restrictions on the use or enjoyment of

the property, real or personal, of any of the Settling Defendants, the Farm, or any property owned or

controlled by the Settling Defendants affected by the covenants, conditions, and restrictions and access

rights herein, or adjacent to the Farm, or response activities at the Farm, or any claim arising out of the

release or threatened release of Hazardous Substances into the environment at the Farm or on the

property of any Settling Defendants.

   E. Notwithstanding the forgoing and any other provision of this Consent Decree, the

Settling Defendants reserve and this Consent Decree is without prejudice to the rights of the Settling

Defendants, if any, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and arising from

enforcement actions taken subsequent to entry of this Consent Decree for the enforcement of the terms

of this Consent Decree. The United States reserves the right to contest any such action brought by the

Settling Defendants under the Equal Access to Justice Act.

  72. Nothing in the Consent Decree shall be deemed to constitute approval or preauthorization

of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R.

300.700(d).

Retention of Jurisdiction

73.   This Court shall retain jurisdiction of this matter for the purpose of enforcing,

supervising and modifying the terms of this Consent Decree.

74.   Non-material modifications to the Consent Decree may be made by stipulated

agreement among the parties and shall become effective upon filing with the Court by the United States.

Lodging and Public Comment

75.   This Consent Decree shall be subject to a minimum thirty (day public comment period

in accordance with 28 C.F.R. § 50.7 and 42 U.S.C.§9622(i).  The United States reserves the right to

withdraw or withhold its consent to the Consent Decree if comments received disclose facts or

considerations which show that the Consent Decree is inappropriate, improper or inadequate within the

meaning of 28 C.F.R. § 50.7.

Signatories, Service and Certifications

76.   Each Settling Defendant certifies that he or she is fully authorized to enter into the terms

and conditions of this Consent Decree and to execute and legally bind such party to the terms herein.

77.   Each Settling Defendant certifies that he currently holds the relationship to Tropical

Fruit, S.E. as evidenced in that Defendants signature block below.

78.     Each settling Defendant certifies that all documentation submitted regarding the current financial condition of each of the Settling Defendants is true, complete and accurate as of the date of signature.

79.     Each Settling Defendant authorizes his attorney to accept service of process by mail or by hand on behalf of that party with respect to all matters arising under or relating to this action. Each Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

80. The parties agree that each party will bear its own costs and attorneys fees.

*october 24, 2001*

UNITED STATES DISTRICT COURT