UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 97-1442-DRD |
| v. | |
| TROPICAL FRUIT, S.E.; AVSHALOM LUBIN; CESAR OTERO ACEVEDO; and PEDRO TOLEDO GONZALEZ, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION OF THE UNITED STATES FOR ORDER REQUIRING DEFENDANTS TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT OF AND ORDERED TO IMMEDIATELY COMPLY WITH THE CONSENT DECREE**

The United States of America, by the authority of the Attorney General and on behalf of the United States Environmental Protection ("EPA"), submits this memorandum in support of its Motion for An Order to Show Cause why Defendants should not be held in civil contempt of and ordered to immediately comply with the Consent Decree this Court entered on October 25, 2001. The United States will show, among other things, that Defendants failed to comply with the Decree requirements that they remove the mango and banana trees from the No Spray Buffer Zones and plant plantain trees in their place and failed to establish the vegetative barrier at the border of the Farm to help stop pesticide spray drift.

# I. PRELIMINARY STATEMENT

A. <u>BACKGROUND</u>

Tropical Fruit, S.E. ("Tropical Fruit"), a special partnership organized under the laws of the Commonwealth of Puerto Rico, owns and operates a farm of approximately 2,300 acres in size in Guayanilla, Puerto Rico, at which it grows mangos, bananas and plantains ("the Farm") (Final Pre-Trial Order, Statement of Uncontested Material Facts, ¶¶ 1 - 3;  <u>United States v. Tropical Fruit, S.E.</u>, 96 F.Supp.2d 71, 73 (D.P.R. 2000)).  Defendants Pedro Toledo Gonzalez and Cesar Otero Acevedo are or were general partners of Tropical Fruit and Avshalom Lubin manages the day-to-day operations of the Farm (Final Pre-Trial Order, Statement of Uncontested Material Facts, ¶¶ 19 - 21).  The border of the Farm on the north and west is the Rio Yauco and public roads;  residential areas are located as close as 80 feet from the Farm separated by the Rio Yauco and the adjacent roads (Defendants' Answers to the United States' First Request for Admissions, RFA 143).

Since beginning operations in 1991, Tropical Fruit has applied numerous pesticides to its crops, including Benlate, Kocide #101, Kocide LF and Malathion 25% (Final Pre-Trial Order, Statement of Uncontested Material Facts, ¶¶ 6, 7).[1]  On numerous occasions prior to July 2001, the Farm sprayed pesticides on its crops which drifted[2] beyond the borders of the Farm and into

---

[1]  Many of these pesticides that the Farm used are or contain hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

[2]    The labels for many of the pesticides that the Defendants use state in part:  "[d]o not apply this product in a way that will contact workers or other persons either directly or through drift." (U.S. Trial Exhibits 58 - 65).   Pesticide "drift" is the movement of pesticide droplets, particles, or vapor (<u>see generally</u> testimony of Dr. Peter Drivas, July 11, 2001).   Pesticide "spray drift" is

the Guayanilla Community.

In March 1997, the United States filed this case on behalf of the EPA and alleged, <u>inter alia</u>, that Tropical Fruit violated the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 <u>et seq</u>., and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, <u>et seq</u>., by applying pesticides to agricultural crops, including mangos and bananas, in such a manner that the pesticides drifted or otherwise migrated beyond the boundaries of the Farm in contravention of the pesticide label requirements and an EPA Administrative Order issued on December 20, 1996. The purpose of this lawsuit was to protect nearby residents and Farm workers from the potential harmful effects of pesticides.

On November 13 and 19, 1997, the Court conducted an evidentiary hearing at the conclusion of which the Court ordered Defendants to cease and desist from applying pesticides in the sectors of the Farm adjacent to residential areas, unless such application was by agreement between EPA and the Defendants.   In subsequent stipulations between the parties, entered as Orders of the Court, Defendants were permitted to apply numerous pesticides using the mechanized airblast method, but only outside of specified buffer zones.

On March 31, 2000, the Court ruled upon the United States' Motion for Partial Summary Judgment and issued a Decision and Order holding Tropical Fruit liable for certain violations of FIFRA and CERCLA and holding that Tropical Fruit is not exempt from liability under Section 107(i) of CERCLA.  <u>United States v. Tropical Fruit, S.E.</u>, 96 F.Supp.2d 71 (D.P.R. 2000).

_____

the physical movement of a pesticide through the air at the time of application or soon thereafter, to any site other than that intended for application  (<u>see generally</u> testimony of Dr. Peter Drivas, July 11, 2001).

- 3 -

On July 9, 2001, trial commenced in this case on the questions of the permanent injunctive relief, if any, which would be imposed upon Tropical Fruit's pesticide spraying operations and the amount of civil penalties and CERCLA response costs for which Tropical Fruit, its partners and Mr. Lubin would be liable.   During the week of July 9th, the parties made opening statements and the United States presented a portion of its direct case.   The United States presented the testimony of two expert witnesses –  Dr. Barbara Beck, a toxicologist, and Dr. Peter Drivas, a chemical engineer specializing in air modeling -- and six fact witnesses, all members of the Guayanilla community.

On or about July 12, 2001, prior to the conclusion of the United States' case, the parties reached an agreement-in-principle to resolve the issues that were the subject of the trial before the Court.  On August 21, 2001, the United States lodged the Consent Decree (docket entry # 91), described in detail below, which memorialized the agreement-in-principle and which would resolve the issues before the Court.   On October 25, 2001, following a 30 day public comment period, this Court entered the Decree as an order of the Court (docket entry # 93).

B.  <u>DEFENDANTS VIOLATED THE  CONSENT DECREE</u>

 The Consent Decree requires injunctive relief consisting of, <u>inter alia,</u> (i) planting a vegetative barrier comprised of neem trees at the border of the Farm to help stop the drift of pesticides beyond the borders of the Farm; and (ii) creating Buffer Zones, including the removal of mango trees and banana trees, and replacing them with plantain trees which will not be sprayed, which measures also will limit the drift of pesticides.   The Consent Decree allowed Tropical Fruit three years from the entry of the Consent Decree or until October 25, 2004 to complete compliance with these provisions of the Consent Decree.  However, as is demonstrated

below, Defendants have completely failed to comply with key injunctive relief provisions of the Decree specifically designed to protect the public from pesticide drift. Set forth below is a recitation of the specific provisions of the Decree relevant to the present proceeding and a description of Defendants' violations of these provisions.

1. Defendants failed to remove mango and banana trees from the Buffer Zones

The Consent Decree requires three types of protective Buffer Zones up to 173 feet in width on the northern and a portion of the western border of the Farm.

First, in the two separate areas of the Farm devoted to mango production and adjacent to the Guayanilla Community (see map found in Consent Decree Attachment 1, attached hereto for the Court's convenience; Buffer Segments[3] A and D), the Decree provides that there shall be a 173 foot No-Spray Buffer Zone measured from the border of the Farm inward (Consent Decree, ¶¶ 8, 10, 11, 12A, 12D). During a three-year phase-in period, the Decree allows limited hand-spraying to take place in these areas; after this period, no pesticides can be sprayed in these areas (Consent Decree, ¶ 18). Of particular importance, within this 173 foot No-Spray Zone, the Decree requires, during the phase-in period, the Farm to either remove or relocate (at the Farm's option) from the No-Spray Zone all mango trees and replace them with plantain trees (Consent Decree, ¶¶ 15, 16). Therefore, by October 25, 2004, no mango trees should be present within these Buffer Zones. The Farm further agreed that the plantains will never be sprayed with any

---

[3] The Farm divides its acreage into designated areas; from West to East, the Farm has designated the areas of the Farm as Sectors 2, 1, 3, 5, and 7 and Vega 1, 3, 4 and 5. The map attached to the Consent Decree (and appended hereto for the Court's convenience) and the Consent Decree itself identify areas in the Farm according to a different system. This map and the Consent Decree delineate the border of the Farm as Buffer Segments A, B, C, D, E and F.

pesticides or fertilizers (Consent Decree, ¶ 16). [4]

In addition, in Sectors E and F devoted to banana production, the Decree requires Defendants to remove (or relocate) the banana trees and to plant plantain trees.  Decree, ¶ 16. Again, the Decree prohibits any spray application of pesticides in the Buffer Zone areas. (Consent Decree, ¶ 16).

The Consent Decree provides a three year period  in which the Buffer Zone shall be implemented (Consent Decree, ¶ 17).  The Decree requires that, at the end of the three year period, or by October 25, 2004, all mango or banana trees in the No Spray Zones be removed and replaced with plantain trees.  Consent Decree, ¶ 16.   In addition, after October 25, 2004, no pesticides of any type applied by any method are permitted in the No-Spray Zones.

EPA inspected the Farm on a number of occasions after the entry of the Decree, including on October 26, 2004.   EPA found significant violations of the Decree.   The inspections revealed, including the most recent inspection, that Defendants removed very few mango and banana trees.   Whereas the Decree required Defendants to remove all mango trees in Buffer Segments A - D within three years after entry of the Decree or October 25, 2004, the inspection showed that only a very small number were removed from these Buffer Segment areas.   See Lopez Declaration ¶¶ 17 -20, 23, and Photos attached thereto.  Whereas the Decree

[4]   The Decree requires a different type of Buffer Zone for the areas of the Farm in mango and banana production which are not adjacent to residences.   Buffer Zones in the areas in mango production and not adjacent to residences shall consist of either a 50 or 75 foot No-Spray Zone, coupled with limited hand-spraying in the remaining 97 - 123 feet of the Buffer Zone (see Attachment 1 to Consent Decree, Segments B and C; Consent Decree, ¶¶ 12B, 12C, 14). Outside of the 50 or125 foot No-Spray Zones in the banana sectors, the Farm will be allowed to mechanically spray pesticides, but the Decree limits the Farm to raising bananas or plantains in these sectors and to the use of only certain types of pesticides (Consent Decree, Attachment 3). The Buffer Zones mentioned in this footnote are not at issue in the present Motion.

required Defendants to remove all banana trees in Buffer Segments E -F within three years after

entry of the Decree or October 25, 2004, the inspection showed that very few, if any, banana

trees were removed from the Buffer Segment areas.   See Lopez Declaration ¶¶ 21 - 23. The

inspection also revealed (as one would expect) that Defendants did not plant the required

plantain trees (because Defendants had not created space by removing the mango and banana

trees) in the Buffer Segments.  See Lopez Declaration, ¶ 24.  In sum, Defendants violated the

Consent Decree by failing to remove the vast majority of the trees they were required to remove

and by failing to plant plantains in their place.

In June 2003, the Farm requested that EPA relieve it of its obligation to remove mango

and banana trees from Buffer Zone areas.   See Shapiro Declaration, Exhibit 1, Letter from

Attorney Sifre dated June 12, 2003.   In July 2003, EPA rejected the Farm's request that the

Farm be allowed to avoid compliance with key provisions of the Decree and notified the Farm

that it was required to comply with the Decree provision requiring the removal of mango and

banana trees from the Buffer Zones.  See Shapiro Declaration, Exhibit 1, Letter from EPA dated

July 2, 2003.

    2.  Defendants failed to plant neem trees required to create the agreed upon vegetative
barrier and failed to properly cultivate some of the trees they did plant

The Consent Decree requires the Farm to plant and maintain a vegetative barrier,

consisting of neem trees along nearly the entire northern border of the Farm and where the

western border runs close to homes or public roadways (see Attachment 1 to Consent Decree,

Buffer Zone Segments A - E; Consent Decree, ¶¶ 6, 7).   This  vegetative barrier will help to

prevent drift in two ways.  First, the presence of tall trees tends to slow the wind, thus reducing

the distance that pesticide droplets can travel.  Second, the leaves of the neem trees themselves

can directly intercept pesticide droplets that might otherwise drift beyond the Farm boundary (see generally, Drivas Testimony).

In the two segments of the Buffer Zones that are closest to residences (see Attachment 1 to Consent Decree, Buffer Zone Segments A and D), the Decree requires the Farm to plant two rows of neem trees, approximately 15 feet apart and parallel to one another to provide a barrier to pesticide drift (Consent Decree, ¶ 7). The second or inner row of neem trees will provide added protection from pesticide drift. In other areas, the Farm will plant a single row of neem trees (see Attachment 1 to Consent Decree, Buffer Zone Segments B, C and E; Consent Decree, ¶ 6). Neem trees grow at the rate of approximately 10 to 12 feet per year and are expected to reach the height of approximately 30 feet within three years of being planted (see Consent Decree, ¶ 17). [5] The Decree requires that the neem trees be at least 1.5 feet in height when planted, staked for support when planted, drip irrigated, and replaced as necessary to preserve a continuous row, and ultimately maintained at a height of approximately thirty feet. The Farm is required to remove any mango trees or other vegetation necessary to permit the planting and maintenance of the Outer Vegetative Barrier. Decree ¶ 15.

Following expiration of the three-year phase-in period, EPA's October 26, 2004 inspection revealed that Defendants failed to comply with the neem tree requirements of the Consent Decree in several respects. First, Defendants failed to plant a sufficient number of neem trees to create a uniform barrier as required by the Decree. As described above, the Consent

---

[5] The only area along the northern border of the Farm and where the western border runs close to homes or public roadways which will not have a vegetative barrier is the far northeast banana sector (see Attachment 1 to Consent Decree, Segment F) where the Farm has agreed to create a 125 foot No-Spray Zone along the Farm's border in lieu of the vegetative barrier.

Decree requires Defendants to plant a double row of neem trees in certain areas along the border of the Farm.   The Decree requires Defendants to create an "Outer Vegetative Barrier" in Sectors 1, 2, 3, 5,7 and Vega Sector 1 and an Inner Vegetative Barrier in Segments A and D.  EPA's inspection revealed that Defendants had failed to plant a continuous row of neem trees in certain segments of the Farm so that there are gaps in the vegetative barrier.   See Lopez Declaration, ¶ 11, Photograph log attached to Lopez Declaration and photos 19 and 20 attached to the Lopez Declaration.

Second, many of the neem trees that the Farm did plant have failed to grow close to the expected height of 30 feet.    Lopez Declaration, ¶¶ 8 - 15.  Defendants are required to maintain the neem trees and to provide a system of drip irrigation to nurture such trees.   Decree, ¶¶ 6 and 7.  EPA's inspection revealed that Defendants have not provided a drip irrigation system to all trees.   Lopez Declaration, ¶ 16.   As a result, some of the neem trees have grown to the expected height, but many have not.   Lopez Declaration, ¶¶ 8 - 15.  Defendants' failure to properly irrigate the neem trees and to properly cultivate those trees that are deficient in height is itself a violation of the Decree.

### 3.  Defendants failed to prepare an adequate work plan

Paragraph 17 of the CD requires Defendants to submit a work plan "setting forth the manner in which the Farm will implement the Buffer Zone and vegetative barrier provisions of the consent decree."  Such work plan was to be submitted within thirty days of the entry of the consent decree (or no later than November 24, 2001) .  Consent Decree, ¶ 17.   Pursuant to Paragraph 54, all reports and submissions, including the work plan, are to be signed and certified.        Defendants failed to comply with the Work Plan requirement.  As of November

24, 2001 and continuing until October 25, 2004, the Farm had not submitted a signed and certified Work Plan setting forth the manner in which the Farm would implement the Buffer Zone, including installation and maintenance of the Vegetative Barrier and removal of trees within the No Spray Zones, Lugo Declaration, ¶ 8, despite the fact that beginning in 2002 EPA notified the Farm that the Work Plan it submitted was inadequate, Shapiro Declaration, Exhibit 1, Letter from EPA dated May 16, 2002.

    4.  <u>Defendants sprayed prohibited pesticides</u>

       The Decree restricts the application of pesticides at the Farm to those pesticide products listed in Attachment 3 to the Decree unless prior written approval is granted by EPA.  Decree, ¶ 25.  EPA's investigation reveals that, on at least two occasions, Defendants applied products not on the approved list without seeking approval from EPA.  Defendants' own spray records reveal that Defendants applied the pesticide Tilt in December 2001, and in March 2002 applied the pesticide Gramoxone.   The Farm was not authorized to use either pesticide.  Lugo Declaration, ¶ ¶ 13 - 16.  <u>See also</u> Shapiro Declaration, Letter from Attorney Schaaf dated February 20, 2002.  Accordingly, Defendants violated the Decree by applying unapproved pesticides.

    5.  <u>Defendants conducted hand-spraying without the presence of the monitor</u>

       The Decree prohibits Defendants from conducting a hand-spray application of pesticides in certain sectors of the Farm – the No Spray Zones – without the presence of the designated Monitor.  Decree, ¶ 39 .  On September 3, 2002, in the presence of Puerto Rico Department of Agriculture inspector Roberto Rivera, the Farm conducted a hand-spray application in the designated No Spray Zones of the Farm without the presence of the Monitor.   Rivera

Declaration, ¶ ¶ 11 -13.  Hand-spraying without the presence of the Monitor constitutes a violation of the Decree.

### 6.  Defendants failed to provide adequate notification of pesticide applications

The Decree requires Defendants to give EPA notice of pesticide applications, both prospectively and retrospectively.  In advance of applications, Paragraph 41 specifies that Defendants fill out a form, set forth as Attachment 5 of the Decree, and send it to EPA at least 72 hours before an application, with changes faxed at least 24 hours before the amended applications.  From the entry of the Consent Decree in October 2001 until July 2002, the Farm failed to provide advance notice of pesticide applications.  Lugo Declaration, ¶ ¶ 17 - 18.

The Decree also requires Defendants to submit a written progress report (Attachment 6 to the Decree) identifying, among other things, "all spraying applications of pesticides or fertilizers which are scheduled during the next month."  Decree, ¶ 42.   EPA's examination of these reports revealed that Defendants have been submitting the same prospective schedule for every month.  Lugo Declaration, ¶ ¶ 19 - 20.  It is clear from the actual spray records that the Farm submits following each month's spraying activity that there is a wide variation in what pesticides they apply and how frequently.  However, the prospective spray schedules that the Farm submits each month contain the exact same listing and frequency of pesticides, which indicates that they are not making any effort to accurately predict the pesticides they intend to apply each month. Lugo Declaration, ¶ 21.  Defendants' failure to accurately list the pesticides they intend to spray in the following month is a violation of the Decree.

<u>7.  Defendants violated worker protection regulations</u>

The Decree requires Defendants to properly train all new workers regarding pesticide application, use, disposal, storage or mixing.  Decree, ¶ 48.  Paragraph 47 requires Defendants to comply with "all worker protection requirements for pesticide and hazardous substance use and application."  This paragraph does not cite to the Worker Protection Standards ("WPS") of 40 C.F.R. Part 170, but Paragraph 1 of the Decree states that Defendants shall strictly comply with the environmental laws of the United States and Puerto Rico, including FIFRA, 7 U.S.C. § 136 <u>et seq</u>., and the "regulations promulgated pursuant to such environmental laws."

The Puerto Rico Department of Agriculture inspector Roberto Rivera personally inspected the Farm and his inspections revealed that:

•    Defendants failed to post and make accessible to its workers its pesticide application records.  Mr. Rivera inspected the Farm on February 26, 2003 and found the only posted and accessible pesticide application record was four months old, from October, 2002.

•    Defendants failed to provide decontamination supplies.   Mr. Rivera inspected the Farm on February 26, 2003 and observed that the Farm had not provided eyewash, soap, single use towels and water.  During an inspection on March 12, 2004, Mr. Rivera made similar observations.

•    Defendants failed to train employees in pesticide handling procedures.  During an inspection on March 12, 2004, Mr. Rivera spoke with Farm employees who stated that they had not received pesticide handling training.

•    Defendants failed to properly restrict employee entry into areas sprayed with pesticides.  During an inspection on February 26, 2003, Mr. Rivera observed that the Farm had not properly removed restricted entry interval warning signs in particular sections of the Farm within the time period described by the pesticide labels for Malathion and Benalte.

Rivera Declaration, ¶¶ 14 - 19.   Accordingly, the Farm violated at least four separate worker protection regulations.  These work protection deficiencies constitute violations of the Consent Decree.

8.  Defendants failed to place deed restrictions

The Decree  requires Defendants to place deed restrictions on two pieces of property: one adjacent to the Farm (the "cow pasture" and adjacent land) and one within the Farm's boundaries (portions of Vega sectors 1 and 4) which restrictions are intend to protect members of the general public from exposure to pesticides.   Decree, ¶¶ 19 and 20.  The Decree requires that the deed restrictions "ensure that it [the properties] will only be used for agricultural activities that do not require the application of pesticides or fertilizers through airblast or hand-spray application so long as the Farm continues to operate as a farm."  Decree, ¶¶ 19 and 20.   The Decree directs Defendants to submit proposed deed restrictions to EPA for "review and approval within 90 days of entry of th[e] Consent Decree."  Decree, ¶ 19.   Defendants should have provided the deed restrictions to EPA for its review no later than January 25, 2002, but have never done so.   Lugo Declaration, ¶¶ 9 - 10.   The failure to file the deed restrictions is a violation of the Decree.

9.  Defendants' Monthly Progress Reports state that the Farm intends to hand-spray pesticides in areas in which hand-spraying is prohibited after October 25, 2004

As described above, the Consent Decree requires Defendants to remove all mango and banana trees from the No-Spray zones and to plant plantain trees in their place by October 25, 2004.   In the phase-in period from the entry of the Decree until October 25, 2004, limited hand-spraying was permitted in the No-Spray zones.  However, after October 25, 2004, the Decree prohibits pesticide spraying of any kind – including by hand – in the No-Spray areas.   Decree, ¶¶ 10 - 18.  EPA has received the November 2004 monthly progress report (dated November 5, 2004) and the December 2004 monthly progress report (dated December 6, 2004) from the Farm which lists the areas in which the Farm intended to spray in November and December and these

reports state that the Farm planned to conduct hand-spraying of pesticides in all the No-Spray areas of the Farm, including those in Farm Sectors 1, 2, 3, 5, 7 and the Vega Sectors. See Shapiro Declaration, Exhibit 2 attached thereto; Lugo Declaration, Exhibit 1 attached thereto. If the Defendants actually conduct hand-spraying in the No-Spray Zones after October 25, 2004, each such application is an additional violation of the Decree.

> 10. The consent decree provides for stipulated penalties for violations of the decree

The Consent Decree provides that: "Upon written notice of the United States, each of the Settling Defendants shall be jointly and severally liable to pay a stipulated penalty of $10,000 for each violation of this Consent Decree. Each day of each violation shall be considered a separate violation of this paragraph." Decree, ¶ 59. The United States at this time seeks a minimum of $130,000 in stipulated penalties for 13 separate violations of the Consent Decree.[6/]

---

[6/] The United States at this time seeks a minimum of $130,000 in stipulated penalties for 13 separate violations (some of which are multi-day or continuing) of the consent decree, including the Farm's failure to (1) remove mango/banana trees; (2) properly plant and maintain the neem tree vegetative barrier; (3) receive approval prior to the use of the pesticide Tilt; (4) receive approval prior to use of the pesticide Gramoxone; (5) ensure that the pesticide monitor was present while applying pesticides by hand on September 3, 2002; (6) receive approval for a Work Plan from EPA; (7) place deed restrictions on parcels of land north of the Rio Yauco and on parcels of land within the planted area of the Farm; (8) notify EPA in advance of applying pesticides; (9) properly notify EPA of the pesticides it applied; (10) post pesticide application records visible to Farm workers; (11) provide complete decontamination supplies to Farm workers on February 26, 2004; (12) provide complete decontamination supplies to Farm workers on March 12, 2004; and (13) properly maintain pesticide application warning signs for Farm workers. The Consent Decree provides that "[e]ach day of violation shall be considered a separate violation for purposes of this paragraph." Decree, ¶ 59. Accordingly, for the Consent Decree violations that continue for more than one day, the United States is entitled to $10,000 for each day of each violation. The $130,000 amount is the minimum stipulated penalty amount to which the United States is entitled.

- 14 -

<u>**ARGUMENT**</u>

**I.  THIS COURT HAS AUTHORITY TO ENFORCE THE DECREE AND
     TO HOLD DEFENDANTS IN CIVIL CONTEMPT**

The Court has inherent powers to act against any party showing contempt for its authority
by refusing to comply with a consent decree.  <u>McComb v. Jacksonville Paper Co.</u>, 336 U.S. 187,
191 (1949).  To request that the Defendants be adjudged in civil contempt, the United States
does not have to establish that Defendants violated the Decree willfully or intentionally.  <u>Id</u>;
<u>TWM</u>
 <u>Mfg. Co. v. Dura Corp.</u>, 722 F.2d 1261, 1273 (6th Cir. 1983), <u>cert. denied</u>, 479 U.S. 852 (1986).
A <u>prima</u> <u>facie</u> showing of civil contempt by the Defendants is established by proof that
Defendants have not complied with the Decree.  Thereafter the burden shifts to Defendants to
explain their failure to comply with the Decree.  <u>United States v. Rylander</u>, 460 U.S. 752, 755-57
(1983),  <u>NLRB v. Trans Ocean Export Packing Inc.</u>, 473 F.2d 612, 616 (9th Cir. 1973); <u>Sidney v.
MacDonald</u>, 536 F. Supp. 420, 422 (D. Ariz. 1982), <u>aff'd sub nom.</u>, <u>Sidney v. Zah</u>, 718 F.2d
1453 (9th Cir. 1983).

Moreover, it is, of course, within the power of the Court, regardless of whether the Court
holds Defendants in contempt, to require Defendants to comply with the Decree.  A consent
decree is both a contract and a judicial order.  <u>Local Number 93, Int'l Ass'n of Firefighters v.
City of Cleveland</u>, 478 U.S. 501, 519 (1986); <u>United States v. Swift and Co.</u>, 286 U.S. 106, 114-
15 (1932); <u>United States v. Wheeling-Pittsburgh Steel Corp.</u>, 818 F.2d 1077, 1088 (3rd Cir.
1987).  The Court may enforce a decree against one of the parties at the request of another
pursuant to ordinary contract principles.  <u>United States v. ITT Continental Baking Co.</u>, 420 U.S.

223, 238 (1975).  As the Third Circuit, in enforcing an environmental consent decree, stated:

> Although a consent decree is a judicial act, it has many of the attributes of a contract voluntarily undertaken, . . .  and a party to a consent decree, having made a 'free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment,' bears a burden which 'is perhaps even more formidable than had [it] litigated and lost.'

Wheeling-Pittsburgh, supra, 818 F.2d at 1088 (citations omitted).   See also Public Interest

Research Group v. Ferro Merch. Equip. Corp., 680 F. Supp. 692, 694 (D.N.J. 1987).

The Court's power to enforce the decree is an inherent power.  McComb v. Jacksonville

Paper Co., 336 U.S. at 191; Powell v. Ward, 643 F.2d 924, 931 (2nd Cir. 1981);  see In re

Pearson, 990 F.2d 653, 657 (1st Cir. 1993).  Even in the absence of this inherent authority,

however, the Court could enforce this Consent Decree because the parties' intent to retain such

power in the Court is manifest.   Paragraph 73 of the Decree provides that: "This Court shall

retain jurisdiction of this matter for the purpose of enforcing, supervising and modifying the

terms of this Consent Decree."   Accordingly, this Court is fully authorized to enforce this

Consent Decree.

## II.  THE COURT SHOULD GRANT THE RELIEF SOUGHT  BY THE UNITED STATES

The United States submits that all provisions of the Decree should be fully enforced.   The

parties conducted an arms-length negotiation and each provision of the Decree was the subject of

careful negotiation.  The United States agreed to enter into the Decree because the provisions

contained therein were a complete, integrated bundle of injunctive relief.  After both parties

engaged in negotiations and reached an agreement embodied in the Decree, one party to the

agreement, the Farm, can not now select provisions with which it will not comply.  This is

especially true with respect to the provisions concerning the removal of mango trees and creating a

vegetative barrier, which are the center-pieces of the Decree.  The United States requests that this

Court enter an order holding the Farm in contempt of Court and ordering the Farm to comply with the Decree as follows.

    1.  Defendants should be ordered to remove mango and banana trees and to plant
<u>plantain trees in areas in which neem trees are already of sufficient height</u>

The United States requests that the Court enforce the Consent Decree and order the Farm to immediately remove all mango and banana trees in the Buffer Zone areas of the Farm in which the neem trees comprising the vegetative barrier have grown to a height sufficient to serve as a barrier and to plant plantain trees in place of the mango trees as is required by Paragraphs 15 and 16 of the Decree.

    2.  Defendants should be ordered to plant neem trees in all areas required
by the Decree, remove mango and banana trees in Buffer Zone areas in
which the neem trees are not of sufficient height and submit to an
<u>additional hand spray area to protect the Guayanilla Community</u>

The United States requests that the Court order the Farm to immediately plant all the neem trees required to create the mandated vegetative barriers and to install irrigation for all neem trees as is required by Paragraph 6 and 7 of the Decree.  However, merely requiring the Farm to do now what it should have been doing over the last three years does not provide the United States with adequate relief.  The Farm should have planted and properly cultivated the neem trees over the past three years and then removed mango and banana trees in these specified areas by October 25, 2004.  The United States requests that, in the areas in which the neem trees have not reached a height sufficient to serve as a barrier, the Court fashion a remedy that provides the United States with the benefit of the agreement it was promised under the Decree and protects the Guayanilla Community.   Thus, the United States requests that the Farm remove the rows of mango and banana trees it was required to remove under the Decree, to plant plantain trees where these trees had previously been planted  as is required by the Decree and <u>to spray the four rows of trees</u>

closest to these No-Spray Zones only by hand.   The Consent Decree does not require that the

Farm be limited to hand spraying in the four rows of trees nearest these No-Spray Zones after the

mango trees and banana trees are removed from the designated No-Spray Zones.   However, the

Farm failed to comply with the Consent Decree by planting and cultivating the neem trees

necessary to create the vegetative barrier and unless additional relief is required, the United States

will not receive the relief it was promised – the removal of the mango and banana trees and the

planting of plantain trees within three years after entry of the Decree – and the Guayanilla

Community will not receive the protection from pesticide drift contemplated by the Decree.[7]

Instead, the United States and the Guayanilla Community will be required to wait beyond three

years and until the neem trees grow to a sufficient height for the removal of the mango and banana

trees from the designated Buffer Zones.[8]   For these reasons, the United States requests that the

---

[7]   Without the imposition of the hand spraying in the rows of trees nearest the Buffer Zones, the United States would not support the removal of the mango and banana trees from the areas in which the vegetative barrier is not yet of adequate height because the barrier is not yet sufficient to prevent drift.   Requiring only hand-spraying in the four rows of trees nearest the Buffer Zones protects the Community from pesticide drift.

[8]   Indeed, it might be argued that the Farm will be better off as a result of its violations of the Decree because the mango and banana trees which should have been removed will still be present and the Farm will be able to obtain the fruit from these trees at least for a period of time. If these trees are not sprayed, the fruit may be viable only for a limited period of time.   Under no circumstances should the Farm be permitted to continue to spray the mango trees which should have been removed as required by the Decree because the Consent Decree prohibits pesticide spraying of any kind – including by hand – in the No-Spray Zones areas after October 25, 2004. Nevertheless, as described at pages 13 - 14 above, Defendants' November 2004 and December 2004 monthly progress reports state that the Farm plans to conduct hand-spraying in No-Spray Zones in November and December, 2004.   See Shapiro Declaration, Exhibit 2 attached thereto; Lugo Declaration, Exhibit 1 attached thereto.   No pesticide applications of any kind are permitted in the No-Spray Zones after October 25, 2004.   If the Defendants actually conduct hand-spraying in the No-Spray Zones after October 25, 2004, each such application is an additional violation of the Decree and they should be ordered to cease further pesticide application of any kind in the No-Spray Zones.

Court impose an additional protective measure – limiting the Farm to hand spraying in the four rows nearest the No-Spray Zones – until the neem trees reach sufficient height.   When the neem trees reach sufficient height, the Farm will be able to return to mechanical spraying of the four rows of mango trees nearest the No-Spray Zones.   Through this reasonable measure, the United States will be in the same position it would have been in had the Farm complied with the Decree in that the Farm will have removed mango and banana trees from the No-Spray Zones and planted plantain trees in their place within three years after the entry of the Decree.  This measures ensures that the Guayanilla Community is protected from pesticide spray drift during the period required for the neem trees to reach adequate height.

This Court is authorized to order this Hand-Spray Only Zone as a sanction for Defendants' noncompliance with the Decree.  See Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) (district judge, "sitting in equity, is vested with wide discretion in fashioning a remedy" for violations of a decree);  Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 533 F.Supp. 869, 880 - 882 (E.D. Pa. 1982), aff'd, 678 F.2d 470 (3d Cir. 1982) (a court has a broad range of equitable powers to enforce and effectuate its orders and judgments; in fashioning a remedy for violating a consent decree, the district court, sitting in equity, is vested with wide discretion); United States v. City of Detroit, 476 F.Supp. 512, 520 (E.D. Mich. 1979) (City entered into and then violated Clean Water Act Consent Decree; Court stated that it had a "broad range of equitable powers available . . . to enforce and effectuate its orders and judgments").   In sum, the United States requests that this Court order Defendants to plant the required neem trees, properly cultivate all neem trees, remove all mango and banana trees from the No-Spray Zones  – all required by the Decree – and to order an additional Hand-Spray Only Zone as an additional measure to protect the Guayanilla Community and as a sanction for Defendants'

noncompliance until the neem trees grow to an adequate height to serve as a barrier.

### 3.  Defendants should be ordered to comply with worker protection requirements

The United States requests that the Court order the Farm to immediately comply with the worker protection requirements of the Decree, including but not limited to, providing decontamination supplies, restricting employee entry into areas sprayed with pesticides, properly posting pesticide application records, and properly training all employees in pesticide management practices as required by Paragraph 48 of the Decree.

### 4.  Defendants should be ordered to file deed restrictions

The United States requests that the Court order Defendants to immediately place deed restrictions on two pieces of property:   one adjacent to the Farm (the "cow pasture" and adjacent land) and one within the Farm's boundaries (portions of Vega sectors 1 and 4) as required by Paragraphs 19 and 20 of the Decree.

### 5.  Defendants should be required to properly notify EPA of pesticide applications

The Decree also requires Defendants to submit a written progress report (Attachment 6 to the Decree) identifying, among other things, "all spraying applications of pesticides or fertilizers which are scheduled during the next month."  Decree, ¶ 42.   The United States requests that the Court order Defendants to accurately list the pesticides they intend to spray in the following month.

### 6.  Defendants should pay stipulated penalties

The Consent Decree provides that Defendants are liable to pay a stipulated penalty of $10,000 for each violation of this Consent Decree and each day of each violation shall be considered a separate violation of this paragraph.  Decree, ¶ 59.   The United States requests that this Court order Defendants to pay stipulated penalties for all 13 violations of the Decree described

in note 6.

     <u>7.  The United States is not requesting that the Court appoint a Special Master as this Time</u>

The United States notes that the Courts are authorized to appoint special masters, receivers or trustees when a party fails to perform specific acts ordered by a court.  <u>See</u> Fed. R. Civ. P. 70; <u>Feliciano v. Colon</u>, 771 F.Supp. 11 (D.P.R. 1991); <u>see also</u>  <u>Guy v. Citizens Fidelity Bank & Trust Co.</u>, 429 F.2d 828, 833-34 (6th Cir. 1970).   While the United States is not requesting that the Court appoint a special master at this time to ensure the Farm's compliance with the Decree, the United States reserves the right to immediately seek such relief if Defendants continue to fail to comply with the Decree.

## CONCLUSION

For the forgoing reasons, the United States respectfully requests that this Honorable Court grant the United States's Motion for an order requiring Defendants to show cause why they should not be held in contempt of, and required to immediately comply with, the Consent Decree.

Respectfully Submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division

  s/ Henry S. Friedman
HENRY S. FRIEDMAN, Senior Attorney
USDC - PR # G00105
JEROME MACLAUGHLIN, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5268

H.S. GARCIA
United States Attorney
District of Puerto Rico

ISABEL MUNOZ
Assistant United States Attorney
USDC No. 128302
District of Puerto Rico
Federal Building, Room 452
Chardon Avenue
Hato Rey, Puerto Rico  00918
(787) 766-5656

OF COUNSEL:

ERIC SCHAAF, Deputy Regional Counsel
NAOMI SHAPIRO, Assistant Regional Counsel
LOURDES RODRIGUEZ, Assistant Regional Counsel
U.S. Environmental Protection Agency Region II
290 Broadway, 16th Floor
New York, New York  10007
(212) 637-3221

Attachment 1



Red Line Indicates Buffer Zone Perimeter
Letters Indicate Buffer Zone Segments

ATTACHMENT NO. 1

<u>CERTIFICATE OF SERVICE</u>

I, Henry S. Friedman, hereby certify that copies of the MOTION OF THE UNITED STATES FOR ORDER REQUIRING DEFENDANTS TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT OF AND ORDERED TO IMMEDIATELY COMPLY WITH THE CONSENT DECREE and EXHIBITS ATTACHED THERETO, MEMORANDUM IN SUPPORT and PROPOSED FORM OF ORDER were served on December 16, 2004, by electronic mail to jsifre@sbslaw.com and by first-class mail postage prepaid,  as follows:

Jaime Sifre, Esq.
Sanchez, Betances & Sifre
Bolivia # 33, Suite 500
Hato Rey, Puerto Rico  00918


 s/ Henry S. Friedman
HENRY S. FRIEDMAN