UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>TROPICAL FRUIT, S.E.; AVSHALOM LUBIN; CESAR OTERO ACEVEDO; and PEDRO TOLEDO GONZALEZ<br><br>Defendants | Civil Action No. 97-1442-DRD |

### STATEMENT UNDER PENALTY OF PERJURY

I, Ilan Oliver Bender, married, of legal age, and resident of Ponce, Puerto Rico under penalty of perjury, declare:

That my name and personal circumstances are as above stated.

That I obtained a Bachelor of Science degree in Agronomy in Plant Protection from the Hebrew University, Jerusalem.

That obtained a Master of Science degree in Agronomy from the Hebrew University, Jerusalem.

That my current license number as an "Aplicador Privado de Plaguicidas de Uso Restringido" is 2002-P-38955.

That since June 1997 up to the present I have been the Farm Manager at the farm Tropical Fruit, S.P. owns and operates at Road No. 335, Km. 7.2. Rural Zone Boca Guayanilla, Puerto Rico, and where mangoes and bananas are grown ("the Farm").

That am familiar with the Consent Decree entered on October 25, 2001 ("the Consent Decree") due to my duties as Farm Manager.

That since on or around March 7, 2002 up to the present I have also been appointed as Project Coordinator pursuant to the Consent Decree.

That as Farm Manager and Project Coordinator have personal and direct knowledge of the following, in relation to pesticide applications at the Farm, in relation to the inspections conducted from time to time by the U.S. Environmental Protection Agency ("EPA") and by the Puerto Rico Department of Agriculture ("PRDA") at the Farm pursuant to the Consent Decree and in relation to the Farm's efforts to comply with the Consent Decree.

1. Since on or about October 2001, the neem trees which constitute the Outer Vegetative Barrier and the Inner Vegetative Barrier as defined in the Consent Decree were initially planted at the Farm. At the time of the initial planting, the neem trees were approximately 1.5 feet in height when planted. The neem trees were staked for support when planted, have been drip irrigated, and have been replaced as necessary to preserve consistent rows with the purpose of the neem trees ultimately achieving and maintaining a height of approximately thirty (30) feet. As of this date, the approximate height of the neem trees which constitute the Outer Vegetative Barrier and the Inner Vegetative Barrier is of twenty-five (25) feet.

2. As Farm Manager, it is known to me that since 2001 up to the present, a neem nursery with a stock of a few hundred trees has been kept at the Farm for any and all tree replacement needs.

3. To the best of my knowledge, on December 20 and 21, 2001, *Tilt*, an

in stock pesticide included in a list in use at the Farm since before the Consent Decree was entered into and which had been previously approved by the EPA, was applied on the Vega sectors. From my experience as Farm Manager, it is known to me that the spraying of *Tilt* on bananas as was done on December 20 and 21, 2001 does not create a drift of more than a few feet. To the best of my knowledge, following the application of *Tilt* on December 20 and 21, 2001 no complaints from the neighbors of the Farm were received

4  As Farm Manager, it is known to me that Mr. Rafael Inglés, the individual appointed by the EPA to monitor the hand-spraying operations at the Farm pursuant to the Consent Decree started working on or about March 2002

5  From March 2002, up to this date the Farm has properly notified EPA of prospective pesticide applications using Attachment No. 5 of the Consent Decree entitled *Tropical Fruit Projected Application Schedule.*

6  On March 9, 20 and 22, 2002, *Gramoxone*, a herbicide used to maintain areas clean from weeds was applied on the borders of the Vega sectors by lower pressure sprayers on ground level. From my experience as Farm Manager, it is known to me that the application of *Gramoxone* on ground level does not create a drift of more than a few feet. The application of *Gramoxone* took place on the inner slopes of the river dike and the inner roads which border the Vega

Sectors on the south side, that is, in the farthest part of the Vega Sectors in relation to Buffer Zone Segments E & F of Attachment No. 1 of the Consent Decree.

7	At the time of the application, to the best of my knowledge, *Gramoxone* was approved by the EPA for use in other sectors of the *Gramoxone* was included in a list in use at the Farm since before the Consent Decree was entered into and to the best of my knowledge it had been previously provided to and approved by the See, also Attachment No. 6 of the Consent Decree, which refers to *Gramoxone*, as approved for use in other sectors of the Farm

8	The monthly progress report for March 2002 mistakenly stated that *Gramoxone* had been applied in Vega Sectors 1, 3 and 4.

9	Nevertheless, as Farm Manager it is known to me that *Gramoxone* was not applied in Vega Sectors 1, 3 and 4 on March 9, 20 and 22, 2002

10	On March	, 2002, EPA Worker Protection Standard Training Handler Verification Cards were issued to the Farm's workers following the completion of the official Pesticide Handler and Worker safety training as required by the Federal Worker Protection Standard. The training was conducted by Ms. Anna D. Martínez from the PRDA, Laboratorio Agrológico. The attached Exhibit 1 contains true and exact copies of samples of several of the cards issued by

4

the EPA to the Farm's workers on March 11, 2002. The attached Exhibit 1 includes copies of the Handler cards issued to the members of the irrigation team supervised by Mr. Roberto Vélez Vega as well as the Handler card of Mr. Vélez himself.

11. For September 3, 2002 had scheduled with Mr. Rafael Inglés, the individual appointed to monitor the Farm's compliance with the hand-spray provisions of the Consent Decree, a manual application which was to be conducted during the afternoon. Mr. Roberto Rivera Vélez, an EPA-PRDA inspector had been noticed of the hand-spray application, as per his request. Mr. Rivera told me that he intended to take a sample from the spraying mixture during the scheduled hand-spray application on September 3, 2002.

12. On September 3, 2002, on or about 1:00 pm, I received a telephone call from Mr. Inglés. During the course of the conversation, Mr. Inglés told me that he had other obligations and could not come to the Farm

13. After the telephone call, could not reach Mr. Rivera and he arrived about an hour later. At the time, all of the documentation for the hand-spray application was ready. The necessary personnel and equipment were also prepared. The wind and weather conditions were suitable. Upon his arrival, Mr. Rivera said that he could monitor the application according to the applicable regulations and to the limitations and provisions of the Consent Decree. The hand-spray application was conducted then. Mr. Rivera took the sample of the

spraying mixture. Mr. Rivera did not complain to me about any aspect of the application on September 3, 2002 or thereafter.

14  As Project Coordinator, it is known to me that the monthly progress reports are to be submitted to the EPA by the Farm using Attachment No. 6 of the Consent Decree. Since the entry of the Consent Decree, the Farm has consistently complied with the provisions related to such monthly progress reports.

15  Any variations between the monthly prospective schedules submitted to the EPA and the actual monthly spray records are a consequence of commercial mango growing in tropical conditions. It is my experience as Farm Manager that decisions regarding the pesticides to be applied and the concentration of such pesticides ordinarily have to be taken in real time and in accordance with the scouting results of the same day in order to control some diseases in time. The Farm has consistently taken these decisions in compliance with the EPA regulations and the limitations of the Consent Decree.

16  On February 26, 2003, was present at the routine inspection conducted by EPA-PRDA inspector Mr. Roberto Rivera Vélez, accompanied by Ms. Lizette Lugo from the EPA and EPA-PRDA inspector Mr. Juan C. Muñoz, with regard to the Farm's compliance with pesticide worker protection standards, regulations and pesticide label requirements. During the inspection by Mr. Rivera, he notified me of non-compliance with the following four (4) worker protection

standards: the pesticide application records posted in the bulletin board was not updated; workers' training records were not updated; a group of workers that were harvesting mangoes in Sectors 9 and 10 did not have decontamination supplies such as soap, paper towels, running water and eye wash facilities with them; and a warning sign for a treated area was left on site over the expiration time of the restricted entry interval. During the inspection, Mr. Muñoz stated to me that if the Farm corrected the findings above described within a two week period, the lack of compliance would not be considered a violation. The attached Exhibit 2 is a true and exact copy of the Notice of Pesticide Use/Misuse Inspection of February 26, 2003.

17    It is known to me that during the inspection of February 26, 2003 the Farm's workers who were harvesting mangoes had with them the Handler cards issued on March 11, 2002, some of which are included in the attached Exhibit 1

18    On March 13, 2003, was present during the follow-up inspection conducted by EPA-PRDA inspector Mr. Roberto Rivera accompanied by EPA-PRDA inspector Mr. Juan C. Muñoz and Ms. Najda Alvarez. During the follow-up inspection, was informed by both Mr. Rivera and Mr. Muñoz that the Farm had fully complied with all the worker protection standards and requirements discussed during the February 26, 2003 inspection. Both Mr. Rivera and Mr. Muñoz mentioned to me that they were satisfied with the quick and full compliance

achieved and recommended that the Farm continue in this way. Due to the expressions of Mr. Rivera and Mr. Muñoz, understood the matter was closed. The attached Exhibit 3 is a true and exact copy of the Notice of Pesticide Use/Misuse Inspection of March 13, 2003.

19    Nevertheless, on April 17, 2003 a notice of violation was issued by the PRDA Laboratorio Agrológico Interim Director, Ms. Carmen H. Zayas, to the Farm, through the undersigned. The attached Exhibit 4 is a true and exact copy of the letter sent by the PRDA. The attached Exhibit 5 is a true and exact copy of the response sent on May 6, 2003 by certified mail to Ms. Carmen Zayas. Following the receipt of the response on May 9, 2003, no further action was taken by the PRDA.

20    On March 28, 2003 and May 7,13, and 28, 2003 more than forty (40) employees of the Farm received a video training on worker protection standards which was supplied to me by an EPA representative. The attached Exhibit 6 contains true and exact copies of two samples of signed certificates of the Farm's workers with regard to the training received on March 28, 2003 on the subject of worker protection standards.

21    It is known to me that, to this date, the Farm provides the video training supplied by the EPA to each new employee when he starts working at the Farm

22    From November 12 to November 14, 2003, heavy rains caused the

Río Yauco to overflow and certain sectors of the Farm were flooded As a result of the floods, a portion of the neem barrier located at Buffer Zone Segment B and C was destroyed and/or damaged. took the photographs attached as Exhibit 7. Photo No. 1 shows the state of the neem barrier after the floods. Photo No. 2 shows the state of the neem barrier before the floods.

23  After the floods of November 2003, it is known to me that the Farm took all adequate steps to replace the destroyed neem barrier, by planting, irrigating and properly cultivating the replacement neem trees in Segments B and C.

24  As Farm Manager, it is known to me that the replacement trees planted on the new river dike have been replanted two (2) times in the last four (4) years in Segments B and C due to the river dike collapsing during rainy season.

25  On March 12, 2004, was present during an operational inspection performed by EPA-PRDA inspector Mr. Roberto Rivera Vélez, EPA-PRDA inspector Juan C. Muñoz and EPA Enforcement Officer, Mr. Vera Soltero. During the inspection, Mr. Rivera, Mr. Muñoz and Mr. Soltero checked a manual spraying in Sections , 3 and 5 and an irrigation maintenance group supervised by Mr. Robert Vélez, which was working on Sections 20-21. The inspectors took samples from the spraying liquid and checked the decontamination equipment. After asking me to leave, the inspectors interviewed the workers of the

irrigation maintenance group. The attached Exhibit 8 is a true and exact copy of the Notice of Pesticide Use/Misuse Inspection of March 12, 2004

26   On March 26, 2004, a follow-up inspection was conducted by EPA-PRDA inspector Mr. Rivera. The attached Exhibit 9 is a true and exact copy of the Notice of Pesticide Use/Misuse Inspection of March 26, 2004.

27   It is known to me that during the inspection of March 12. 2004 the Farm's irrigation team interviewed by Mr. Rivera had with them the Handler cards on pesticide training issued by EPA on March 11, 2002, some of which are included in the attached Exhibit 1.

28   It is known to me that the members of the irrigation team interviewed by Mr. Rivera on March 12, 2004 had received training on worker protection standards during March or May 2003

29   After the inspections conducted on March 12, 2004 and March 26, 2004, no notice of violation was issued by the PRDA to the Farm

30   In the monthly reports which scheduled the future spraying of pesticides during November and December 2004, the Farm mistakenly continued to include Sectors 1, 2, 3, 5 and 7 in the hand-spraying operation. Upon notice from EPA, the mistake was corrected by the Farm

31   Nevertheless, it is known to me that since October 25, 2004 and up to the present no hand-spray operation has been performed in areas

in which hand-spraying is prohibited after October 25, 2004 pursuant to the terms of the Consent Decree.

32  The attached Exhibit 10 is a true and exact copy of a photograph took on April 29, 2005 of the neem nursery with a stock of a few hundred trees which has been kept at the Farm since 2001 for any and all tree replacement needs.

33  The attached Exhibit 11 is a true and exact copy of a photograph took on April 29, 2005 of Buffer Zone Segment C in the Outer Vegetative Barrier. The estimated height of the neem trees is of approximately twenty-five (25) feet.

34  The attached Exhibit 12 is a true and exact copy of a photograph I took on April 29, 2005 of Buffer Zone Segment C in the Outer Vegetative Barrier as it looks from Section 7. The estimated height of the neem trees is of approximately twenty-five (25) feet.

35  The attached Exhibit 13 is a true and exact copy of a photograph I took on April 29, 2005 of Buffer Zone Segment C in between the two neem tree rows. The drip irrigation lines and support post put when the trees were planted are visible.

36  The attached Exhibit 14 is a true and exact copy of a photograph took on April 29, 2005 of a pass between the two neem barriers, in section 7 of Buffer Zone Segment D.

37  The attached Exhibit 15 contains true and exact copies of two photographs took on April 29, 2005 of replaced trees in Section 3

nd    Buffer Zone Segment C

38.    ince on    about October 25    00    nd up to the present, the    arm    as not received    ny written complaints fro    neighbors    regulatory agencies with regard to allegations of pesticide    rifts

39.    As    arm Manager    is    nown to    that since    or about October 25    00    and up to    present    ical    used its piece of property at the F    ad acent to    uffe Zo    Segments    D known as the    cow pasture and the strip    land immediately to the east of the    pasture up to but not    ncluding the westernmost of the    esidents adjacent to Buffer Zone Segment D    ily for agricultu    activities that do no    require the application of pesticides    fertilizers through    irblast or h    d-spray    pplicatio

40.    As Farm Manager    is known to    that    about October 25 200    and up to the present, Tropical    ruit S.    has used its    iece    property at the Farm in the portions of the Vega Secto    whicl    lie withi    the Buffer Zone only for the cultivation of bana

hereby declare under penalty of perjury that the foregoing    true and correct.

Guayanilla, Puerto Rico, this 6    ay of May 2005

_____
Ilan Oliver Bendar