UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| |
UNITED STATES OF AMERICA, |
  |
          Plaintiff, | Civil Action No. 97-1442-DRD
  |
     v. |
  |
TROPICAL FRUIT, S.E.; |
AVSHALOM LUBIN; |
CESAR OTERO ACEVEDO; and |
PEDRO TOLEDO GONZALEZ, |
  |
          Defendants. |
  |

**UNITED STATES' MEMORANDUM IN REPLY TO DEFENDANTS'
OPPOSITION TO MOTION OF THE UNITED STATES
FOR ORDER REQUIRING DEFENDANTS TO SHOW CAUSE WHY
THEY SHOULD NOT BE HELD IN CONTEMPT OF AND ORDERED
<u>TO IMMEDIATELY COMPLY WITH THE CONSENT DECREE</u>**

The United States of America, on behalf of the United States Environmental Protection

("EPA"), submits this memorandum in Reply to Defendants' Opposition to the United States'

Motion for An Order to Show Cause why Defendants should not be held in civil contempt of and

ordered to immediately comply with the Consent Decree this Court entered on October 25, 2001

("the Consent Decree" or "the Decree").   On May 13, 2005 the United States filed a Motion for

Leave to file this Reply and to do so by May 17th because in the Farm's Opposition to the United

States' Motion, the Farm raised a new legal issue that the United States had not addressed in its

early submissions to this Honorable Court.   The Farm now apparently seeks modification of the

Decree entered by this Court and seeks to eliminate its obligation to create a No Spray Buffer

Zone, but has not identified the appropriate legal standard under Federal Rule of  Civil Procedure

60(b) that governs motions to modify a decree.  Even had the Farm identified the proper standard, it does not in any way satisfy the elements necessary to modify a consent decree.  The United States has sought leave to file this Reply Memorandum so that it can provide for this Honorable Court the applicable legal standard that governs requests to modify consent decrees and the case law that is relevant to such requests, and to demonstrate that the Farm's request to modify the Decree should be rejected.

## I.  PRELIMINARY STATEMENT

On December 16, 2004, the United States moved to enforce the Decree and for contempt because Defendants[1] have failed to comply with key injunctive relief provisions of the Decree specifically designed to protect the public from pesticide drift.  See United States' Memorandum in Support of Motion to Enforce and for Contempt [docket entry 95]. [2]

The Consent Decree requires Defendants, inter alia, to create Buffer Zones, including the removal of mango trees and banana trees, and to replace them with plantain trees which will not be sprayed, which measures will limit pesticide drift.  Decree, ¶¶ 15, 17, 18.   The Consent Decree allowed Tropical Fruit three years from the entry of the Consent Decree or until October 25, 2004 to complete compliance with these provisions of the Consent Decree (as will be shown below, the Farm's obligation to begin removing trees from the Buffer Zone areas began when the neem trees on the border of the Farm reached a height of 15 feet).  The Farm acknowledges that it has completely failed to comply with this provision and has not removed any mango trees or

---

[1]  In this memorandum, the United States sometimes refers to Defendants as "the Farm."

[2]  The United States respectfully relies on the Statement of Facts in the United States' Memorandum in Support of its Motion for Contempt and to Enforce for additional factual background.  See Memorandum, at pp. 5-14, docket entry 95.

banana trees and has not planted the required plantain trees.  See Defendants' Memorandum in Response to United States' Motion [docket entry 105].   The Farm's admission that it failed to remove any trees strongly suggests that the it never intended to comply with this important Consent Decree obligation.  Instead of complying with the Decree, the Farm now states that it seeks to modify the Decree to eliminate the Decree provisions requiring removal of mango and banana trees and creating a No Spray Buffer Zone.  Defendants' request to modify the Decree by eliminating key environmental protections should be denied for the reasons that follow.

## II.  ARGUMENT

### DEFENDANTS CANNOT MEET THE HEAVY BURDEN NECESSARY TO MODIFY A CONSENT DECREE

The Consent Decree provides that the "Settling Defendants agree to relocate or remove all banana plants and mango trees from the No-Spray zone."  Decree, ¶ 15.  The Decree also provides that:

> The Work Plan shall provide for a period of implementation that shall not exceed three years from the date of entry of this Consent Decree provided that by the end of three years, the neem trees comprising the Inner and Outer Vegetative Barriers, in the determination of EPA, have attained the height of approximately 30 feet. The Work Plan shall coordinate the relocation or removal of mango trees with the attainment of average neem tree heights of 15, 22, and 30 feet.

Decree ¶ 17.

Despite the Decree's clear mandate to remove mango and banana trees to create a No Spray Buffer Zone, the Farm, without ever filing a Motion requesting modification during the three year phase-in period (or thereafter), states in its memorandum that it seeks modification of the Decree by the Court.  Defendants' Memorandum, pp. 10-12, 17.   Thus, the Farm is asking for nothing less than the complete re-writing of the crucial terms of the Consent Decree in that

- 3 -

the Farm is seeking to avoid its responsibility to remove mango and banana trees and to create a

No-Spray Buffer Zone.

Because the Farm is seeking to modify the existing Consent Decree, its request is

governed by Rule 60(b) of the Federal Rules of Civil Procedure and the relevant case law

thereunder.  Rule 60(b) of the Federal Rules of Civil Procedure provides that:

> upon such terms as are just, the court may relieve a party . . .  from a final judgment,
> order, or proceeding [if] . . . it is no longer equitable that the judgment should have
> prospective application . . . .

Fed. R. Civ. P. 60(b)(5).   The United States Supreme Court has made clear that relief is not

warranted when the party merely finds "it is no longer convenient to live with the terms of a

consent decree." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383 (1992).

The Farm's burden is particularly heavy because it freely consented to the very

conditions it now seeks to modify.   Philadelphia Welfare Rights Org. v. Shapp, 602 F.2d 1114,

1120 (3d Cir. 1979) ( "[W]here, as here, the defendants made a free, calculated and deliberate

choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment[,]

their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost.")

Bellevue Manor Assoc. v. United States, 165 F.3d 1249, 1253 n.4 (9th Cir. 1999) ("[i]t might be

argued with some force that there is even less of a basis to disrupt a consent decree to which all

parties agreed (which thus truly partakes in part of the nature of a contract) than a court-issued

final judgment that has been contested by at least one party");  W.L. Gore & Assoc., Inc. v. C.R.

Bard, Inc., 977 F.2d 558, 561 (Fed. Cir. 1992) ("[w]hen litigation is ended by the deliberate

choice of the parties, [the] burden for modification of a consent decree is particularly heavy").

Ultimately, as one court has stated: "A party seeking to modify a consent decree has a

- 4 -

high hurdle to clear and the wind in its face." <u>Sierra Club v. Meiburg</u>, 296 F.3d 1021, 1034

(11th Cir. 2002). Indeed, the Third Circuit has stated that, "[a] court should not later modify [a

consent] decree by interposing terms not agreed to by the parties or not included in the language

of the decree." <u>Harris v. City of Philadelphia</u>, 137 F.3d 209, 212 (3d Cir. 1998).

      As a threshold matter, a party seeking modification of a consent decree must show that a

significant change in fact or in law has occurred since the entry of the consent decree. <u>See Rufo</u>,

502 U.S. at 383-84. If the party seeking modification can establish a significant, unanticipated

change in fact, then it must still establish that the change in circumstances warrants revision of

the decree. <u>See Rufo</u>, 502 U.S. at 384-85. The moving party may meet that burden by

demonstrating that the changed circumstance makes compliance with the consent decree

(1) substantially more onerous, (2) unworkable, or (3) detrimental to the public interest. <u>See

Rufo</u> at 384. <u>Thompson v. H.U.D.</u>, 220 F.3d 241, 247 (4th Cir. 2000). If a party meets the heavy

burden of establishing that a modification is warranted, it must demonstrate that its proposed

modification is "suitably tailored to the change in circumstances." <u>Rufo</u>, 502 U.S. at 393.

      The Farm cannot meet its heavy burden. First, the Farm cannot establish changed

circumstances. In its Memorandum, it states that "bio-pesticides or organic materials" are

available now for application upon mango trees but were not at the time of the entry of the

Consent Decree. Defendants' Memorandum, p. 11, ¶ 35. While some of the products

suggested by the Farm may be new, Defendants have not included declarations attempting to

establish when these new pesticides became available, how these products differ from products

already in use or available at the time of the negotiation and entry of the Consent Decree, or how

the existence of these new products mandate a dramatic change in this Decree. The Farm is

apparently arguing that the mere existence of these allegedly new pesticides somehow makes it completely safe to perform pesticide spraying on the border of the Farm adjacent to homes and public thoroughfares.

Even had Defendants presented some evidence regarding the allegedly new pesticides, the fact remains that these substances are still pesticides that can be harmful to humans and the environment.  Such "organic" or "bio-pesticides" that Defendants have submitted in the past for EPA approval for use at the Farm are pesticides regulated by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 <u>et seq.</u> because they are not non-toxic and therefore the pesticides are required to contain label warnings limiting human and environmental contact with the pesticides, including restrictions on drift.  <u>See</u> United States' Memorandum in Support of Motion to Enforce and for Contempt, Declaration of Naomi Shapiro Exhibit 1.  EPA has received many requests from the Farm over the past three and a half years for the use of new pesticides and, pursuant to the process established by the Consent Decree (¶ 25), has either approved or prohibited the use of the requested new pesticides.  <u>See</u> United States' Memorandum in Support of Motion to Enforce and for Contempt, Shapiro Declaration, Exhibit 1.  Nothing in Defendants' Memorandum in Opposition implies that there has been some fundamental change in the nature and toxicity of pesticides available for mango trees, and indeed there has not been such a change.   Therefore, Defendants have not come close to meeting their burden of showing changed circumstances.

It is clear that Defendants are resisting removing the mango and banana trees to maximize their economic return on these trees and in the absence of changed circumstances.  <u>See</u> Defendants' Memoranda at p. 12, ¶ 41.  The Decree requires a phased approach to tree removal:

- 6 -

some when the neem trees are 15 feet, some when the neem trees reach 22 feet and the remainder when the neem trees reach "approximately" 30 feet.  See Decree, ¶ 18.   The Farm has removed no trees even though the obligation to do so began when the neem trees reached 15 feet in height and even though the Farm acknowledges that the average height of the neem trees is 25 feet.  Defendants' Memorandum at pp. 2, 4, 16.   EPA inspectors have stated that the neem trees have reached 30 feet in height in some portions of the Buffer Zone Segments.  See United States' Memorandum in Support of Motion to Enforce and for Contempt, Declaration of Jaime Lopez, ¶ 15.[3/]   Indeed, it appears that the Farm had no intention of ever complying with the tree removal requirements as it has removed no mango or banana trees despite the fact that the neem trees have reached, according to the Farm, an average height of 25 feet.

Even if the Farm had established the significant changed circumstances required by Rufo and the cases cited above, the Farm has not satisfied the other requirements necessary to modify a consent decree.   The Farm can not demonstrate that the changed circumstance makes compliance with the consent decree (1) substantially more onerous, (2) unworkable, or (3) detrimental to the public interest.  See Rufo at 383.  In fact, the opposite is true.   The burden on the Farm to remove the trees now is exactly the same now as it was when the Decree was entered.   The number and location of the trees is the same now as it was when the parties signed the Decree.  Moreover, there is nothing about the mechanics of tree removal now that is different

---

[3/]   The Farm incorrectly interprets the Decree as requiring tree removal only when the neem trees reach 30 feet in height.  In fact, the Decree requires tree removal in a phased approach beginning when the trees reach 15 feet in height.  Decree, ¶ 18.  The Decree further requires that the Farm remove the last third of the mango trees when the neem trees reach "approximately" 30 feet in height.  Decree, ¶ 18.   The Farm's interpretation of the Decree is inconsistent with the plain reading of the Decree.

than in October, 2001 when the Decree was entered.  The Farm has not even attempted to show

that complying with the Decree is more onerous now than before.  Accordingly, there is no

changed circumstances that make tree removal more onerous or unworkable.

      The Farm can not establish that tree removal harms the public interest.  In fact, the

removal of the trees protects the public interest by creating a No Spray Buffer Zone that protects

the public from pesticide drift.  This Court has already signed the Consent Decree, after a public

comment period, stating that the Decree is "fair, reasonable, and in the public interest."[4]   Decree

at p. 5.  The Farm also agreed, in the same provision, that the Decree is "fair, reasonable, and in

the public interest."  Id.   Further, the public comment period allowed members of the public to

review the Decree and provide comments regarding whether they thought the Decree was in the

public interest.   The change that the Farm seeks would remove the centerpiece of the protection

to the public – the No Spray Zone.   The United States' Memorandum in Support of its Motion to

Enter the Consent Decree, which it filed on September 29, 2001 [docket entry 92], emphasized

the protections afforded by the No-Spray Zone.   See United States' Memorandum in Support of

Motion to Enter, pp. 5, 18 - 19.  The change the Farm seeks would eviscerate a key protection

provided by the Decree and, therefore, the Farm's request to eliminate this protection should be

denied.

      Finally, during the intense settlement negotiations that culminated in the Consent Decree

signed by the parties, the United States made substantial compromises in a number of areas such

as the amount of civil penalties and CERCLA response costs that the Farm would pay.  By

---

[4]   On August 27, 2001, notice of the settlement was published in the Federal Register, 66 Fed. Reg. 45058-59 (Aug. 27, 2001), which marked the beginning of the 30-day public comment period.

seeking to modify the Decree, the Farm is attempting to keep the benefits of the bargain that it received through settlement, while wresting from the United States and the public one of the critical benefits of the settlement that they received: a No Spray Buffer Zone providing protection for residents of the adjacent community who have been adversely affected by past operations at the Farm.  The Farm's attempt to eliminate an important protection to members of the public should be denied.

## CONCLUSION

For the forgoing reasons, the United States respectfully requests that this Honorable Court deny the Farm's request to modify the Decree and grant the United States's Motion for an order holding Defendants in contempt of, and requiring Defendants to immediately comply with, the Consent Decree.

May 17, 2005

Respectfully Submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment and Natural Resources Division

 /s/  Henry S. Friedman
HENRY S. FRIEDMAN, Senior Attorney
USDC - PR # G00105
JEROME MACLAUGHLIN, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5268

H.S. GARCIA
United States Attorney
District of Puerto Rico

ISABEL MUNOZ
Assistant United States Attorney
USDC No. 128302
District of Puerto Rico
Federal Building, Room 452
Chardon Avenue
Hato Rey, Puerto Rico  00918
(787) 766-5656

OF COUNSEL:

ERIC SCHAAF, Deputy Regional Counsel
NAOMI SHAPIRO, Assistant Regional Counsel
LOURDES RODRIGUEZ, Assistant Regional Counsel
U.S. Environmental Protection Agency Region II
290 Broadway, 16th Floor
New York, New York  10007
(212) 637-3221