UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TROPICAL FRUIT, S.E.;<br>AVSHALOM LUBIN;<br>CESAR OTERO ACEVEDO; and<br>PEDRO TOLEDO GONZALEZ,<br><br>Defendants. | Civil Action No. 97-1442-DRD |

## SETTLEMENT AGREEMENT

WHEREAS, In March 1997, the United States filed this case on behalf of the United States Environmental Protection Agency ("EPA") alleging, inter alia, that Tropical Fruit, S.E. and the individual defendants violated the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., by applying pesticides to agricultural crops, including mangos and bananas, in such a manner that the pesticides drifted or otherwise migrated beyond the boundaries of the Farm[1] in contravention of the pesticide label requirements and an EPA Administrative Order;

WHEREAS, on July 9, 2001, trial commenced in this case on the questions of the permanent injunctive relief, if any, which would be imposed upon the Farm's pesticide spraying operations and the amount of civil penalties and CERCLA response costs for which Tropical Fruit, its partners and Mr. Lubin would be liable;

WHEREAS, on or about July 12, 2001, prior to the conclusion of the United States' case, the Parties reached an agreement-in-principle to resolve the issues that were the subject of the trial before the Court.

WHEREAS, on August 21, 2001, the United States lodged a Consent Decree and on

---

[1] The Farm refers to a farm 2,300 acres in size located in Guayanilla, Puerto Rico operated by Defendants.

October 25, 2001, following a 30 day public comment period, this Court entered the Decree as an order of the Court;

WHEREAS, on or about December 16, 2004, the United States filed a Motion to Enforce the Consent Decree and for stipulated penalties ("the United States' Motion") in that the United States alleged that Defendants violated a number of provisions of the Consent Decree including the requirement that Defendants remove or relocate mango trees and banana trees, and replace them with plantain trees which would not be sprayed, from certain designated areas at the border of the Farm;

WHEREAS, Defendants deny they were in violation of the Consent Decree;

WHEREAS, the Court held a status conference on the United States' Motion on July 14, 2005 and set an evidentiary hearing on the issues raised in the United States' Motion for September 7, 2005;

WHEREAS, Paragraph 74 of the Consent Decree permits modifications to the Consent Decree with the agreement of the Parties;

WHEREAS, the Parties agree, without adjudication or admission of facts or law, that settlement of this matter is in the public interest and that entry of this Settlement Agreement without further litigation is an appropriate resolution of the dispute, and the Parties consent to the entry of this Settlement Agreement;

WHEREAS, Settlement Defendants' agreement to this Settlement Agreement is not an acknowledgment or agreement that the facts alleged in the United States' Motion are true or an admission of liability.

NOW, THEREFORE, it is hereby ordered, adjudged, and decreed as follows:

1.      The terms of the Consent Decree will remain in full force and effect except as provided below.

2.      All terms defined in the Consent Decree govern this Settlement Agreement.

3.      The schedule for removing mango trees from certain designated areas at the border of the Farm to create "Buffer Segments" will be modified as follows. Beginning on or before September 15, 2005 Defendants shall commence removing or relocating the mango trees in Buffer Zone Segments A-D required to be removed pursuant to Paragraphs 15 - 17 of the Decree. Defendants shall remove or relocate at least 50 mango trees per week at a rate of approximately 10 trees per weekday until all the trees that are required to be removed under the Consent Decree are removed or relocated, but all such trees shall be removed or relocated by April 1, 2006.

4.     Paragraph 16 of the Consent Decree requires that Defendants plant plantain trees in the Buffer Zone Segment areas in which banana or mango trees had been removed or relocated. The Decree further provides that Defendants shall be prohibited from spraying pesticides on the plantain trees. The Decree hereby is modified to provide that Defendants may plant either banana or plantain trees in the Buffer Segments in which mango trees have been removed or relocated. Further, the Decree requires that banana trees in Buffer Zone Segments E and F shall be removed or relocated. The Decree is hereby modified to provide that Defendants may leave these banana trees in place.

5.     After all mango trees have been removed or relocated pursuant to the schedule set forth in this Settlement Agreement, Defendants shall commence planting of banana or plantain trees in Buffer Zone Segments A and D in which such trees were removed or relocated and shall conclude planting the banana or plantain trees by June 1, 2006. Within Buffer Zone Segments B and C, Defendants shall, by June 1, 2006, at the Farm's option, either plant an Inner Vegetative Barrier of neem trees consistent with paragraph 7 of the Consent Decree, or plant banana or plantain trees.

6.     Defendants may only spray pesticides on banana or plantain trees growing in any Buffer Zone Segments consistent with Paragraph 10 of this Settlement Agreement. Defendants may only spray herbicides in any Buffer Zone Segments by ground application using Solo back sprayers or the equivalent.

7.     Defendants shall send a report to EPA by Tuesday, September 30, 2005 and weekly thereafter reporting on the number of trees removed or relocated during the previous week. Such weekly reporting shall continue until all mango trees are removed as required by this Settlement Agreement and the Consent Decree. Defendants shall send these reports to EPA Region II – Office of Regional Counsel, 290 Broadway, Room 1637, New York, NY 10007-1866, attention: Naomi P. Shapiro, Esq.

8.     Defendants agrees that they will not seek to modify the Consent Decree further by seeking to be relieved of its obligation to remove mango trees from the Buffer Segments as required by this Settlement Agreement and the Consent Decree.

9.     Defendants shall complete planting of all inner and outer vegetative barriers, consisting of Neem trees, pursuant to Paragraph 5 of this Settlement Agreement and Paragraphs 6 and 7 of the Consent Decree, within 90 days of the Court's approval of this Settlement Agreement.

10.    Control of Sigatoka Negra Fungus

a. The Consent Decree is hereby modified to allow the Farm to apply pesticides to address an outbreak of Sigatoka Negra at the Farm. Any such spraying of banana or plantain trees within any Buffer Zone Segment shall be limited by the following conditions:

    i. The Farm must be able to demonstrate an actual outbreak or imminent threat of outbreak of Sigatoka Negra at the Farm;

    ii. The Farm must be able to demonstrate the implementation of all applicable recommendations made in the PRDA's Agricultural Extension Service's Circular concerning the control of Sigatoka Negra (attached hereto as Appendix A);

    iii. The only pesticides that the Farm may apply without the prior consent of EPA pursuant to this Subparagraph 10(a) are Banana Spray Oil (EPA Reg. No. 55206-3); Serenade ASO (EPA Reg. No. 69592-12); and Abound (EPA Reg. No. 100-1098). The Farm may only apply Banana Spray Oil and Serenade by ground boom sprayer or by hand-spray application and may only apply Abound through ground boom sprayer, hand-spray application or irrigation. If the Farm seeks the use of another product, the Farm may make a written request to EPA to spray with this additional product(s), setting out the reason(s) for the request and providing a complete label for the proposed product no less than seven (7) days before its proposed use. Such request shall include the products proposed to be applied, the areas, quantity, and methods of application, and the expected date and time of application. EPA has the unreviewable discretion to decide whether to grant the Farm's request. Failure to respond to the request by the date proposed for the application will not constitute an approval.

    iv. If the Puerto Rico Department of Agriculture ("PRDA"), or University of Puerto Rico Agricultural Extension Service issues a written Executive Order, Circular, or other document after September 1, 2005 directing the Farm to spray banana or plantain trees within the No-Spray Zone for the treatment of Sigatoka Negra other than as provided in Subparagraph 10.a.iii above, the Farm shall make a written request to EPA to spray with this additional product(s), providing a complete label for the proposed product no less than seven (7) days before its proposed use. Such request shall include the products proposed to be applied, the areas, quantity, and methods of application, and the expected date and time of application. EPA has the unreviewable discretion to decide whether to grant the Farm's request. Failure to respond to the request by the date proposed for the application will not constitute an approval. A copy of the written Order, Circular or other document directing spaying should also be submitted with the request.

  b. In making any application pursuant to this Subparagraph 10.a., the Farm must take all applicable steps to reduce spray drift and comply with the label requirements of the applied pesticides, and give EPA written notice no less than 24 hours prior to spraying. Such notice shall include the products to be applied, the areas, quantity, and methods of application, the expected date and time of application, and an explanation of the reason for the application.

  11.  <u>Force Majeure.</u>

    a.  "Force Majeure," for purposes of this Settlement Agreement, including but

not limited to paragraphs 3 and 5 above, is defined as any event arising from causes entirely beyond the control of the Defendants, including their contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Settlement Agreement notwithstanding Defendants' best efforts to avoid the delay. Stipulated penalties shall not be due for the number of days for noncompliance caused by a Force Majeure event as defined in this Paragraph, provided that Defendants comply with the terms of this Paragraph. Examples of events which may constitute force majeure events include, but are not limited to, natural disasters such as floods, hurricanes, or other severe weather conditions affecting the Buffer Segments at the Farm, and national or regional emergencies. Examples of events that are not force majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, the financial difficulty of the Defendants to perform such work and acts or omissions attributable to Defendants' contractors or representatives.

    b. If any event occurs which may delay or prevent the performance of any obligation under this Settlement Agreement, whether or not caused by a Force Majeure event, Defendants shall notify EPA within seventy-two (72) hours after Defendants first knew or should have known that the event might cause a delay. Within five (5) working days thereafter, Defendants shall provide to EPA, at the addresses specified in Paragraph 7 above, a written explanation of the cause(s) of any actual or expected delay or noncompliance, the anticipated duration of any delay, the measure(s) taken and to be taken by Defendants to prevent or minimize the delay, and a proposed schedule for the implementation of such measures. Failure to give timely and complete notice in accordance with this Paragraph shall constitute a waiver of any claim of Force Majeure with respect to the event in question.

    c. If the Parties agree that a delay or anticipated delay is attributable to Force Majeure, the time for performance of the obligations under this Settlement Agreement that are affected by the Force Majeure event shall be extended by mutual agreement of the Parties for a period of time as may be necessary to allow performance of such obligations to the extent the delay was caused by a Force Majeure event.

    d. If the Parties are unable to agree as to whether a delay or anticipated delay is attributable to Force Majeure, or on the number of days of noncompliance caused by such event, Defendants may initiate the Dispute Resolution process set forth below. If the Defendants do not initiate the Dispute Resolution process set forth below within seven (7) days of receiving written notice that EPA disagrees as to whether a delay or anticipated delay is attributable to Force Majeure, or on the number of days of noncompliance caused by such circumstances, then Defendants shall be deemed to have waived any Force Majeure claims or any rights to initiate Dispute Resolution with regard to such claims.

    e. Delay in performance of any obligation under this Settlement Agreement shall not automatically justify or excuse delay in complying with any subsequent obligation or requirement of this Settlement Agreement .

12. <u>Dispute Resolution</u>

   a. The dispute resolution procedures in this Paragraph shall be the mechanism to resolve disputes arising under or with respect to this Settlement Agreement. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations that Defendants have not disputed in accordance with this Paragraph.

   b. If the Parties are unable to agree as to whether a delay or anticipated delay is attributable to Force Majeure, on the number of days of noncompliance caused by such event, or on the amount of Stipulated Penalties due, Defendants may initiate informal, good faith negotiations between the Parties to the dispute for a period of up to twenty-one (21) days from the time Defendants give notice of the existence of the dispute to EPA. The period for negotiations may be extended by written agreement of the Parties.

   c. In the event that the Parties cannot resolve any such dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within ten (10) days of the end of the informal negotiation period, Defendant files a petition with this Court setting forth the matter in dispute, the efforts of the Parties to resolve it, and the relief requested. EPA shall then have ten (10) days to respond to any such petition.

   d. In proceedings on any dispute regarding a delay in performance, Defendants shall have the burden of proving: (1) that the delay or noncompliance is or was caused by a Force Majeure event, and (2) that the amount of additional time requested is necessary to compensate for that event. In no event shall the time for performance be extended for a period longer than the actual delay resulting from the Force Majeure event.

   e. In all disputes under this Paragraph, Defendants shall have the burden of proving, based upon an administrative record, that the United States' position is arbitrary and capricious, an abuse of discretion or otherwise not in accordance with law. EPA shall maintain the administrative record of the dispute, which shall contain all statements of the Parties, including supporting documentation, submitted pursuant to this Paragraph.

   13. <u>Civil Penalty</u>. Defendants shall pay a civil penalty in the amount of $50,000 in satisfaction of the claim for stipulated penalties alleged in the United States' Motion as follows: $18,000 within 30 days of the Court's approval of this Settlement; $16,000 within six months after the Court's approval of this settlement agreement, plus Interest calculated from the date of the Court's approval of this settlement agreement; $16,000 within 12 months after the Court's approval of this settlement plus Interest calculated from the date of the Court's approval of this settlement agreement. Payment of this penalty required by this Paragraph shall be made in accordance with Paragraph 58 of the Consent Decree. Interest shall be calculated pursuant to Paragraph 56(d) of the Consent Decree. The appropriate interest rate for 2005 is 2.21%.

14. The United States reserves the right to seek stipulated penalties, as provided in the Consent Decree, for violations of this Settlement Agreement.

15. Public Comment. This Settlement Agreement shall be subject to a minimum fifteen day public comment period in accordance with 28 C.F.R. § 50.7 and 42 U.S.C. § 9622(i). the United States reserves the right to withdraw or withhold its consent to the Settlement Agreement if comments received disclose facts or considerations which show that the Agreement is inappropriate, improper or inadequate within the meaning of 28 C.F.R. § 50.7.

16. Status Conferences with the Court. This Honorable Court has scheduled status conferences so that the Parties can raise issues concerning compliance with this Settlement Agreement as follows: September 7, 2005 and thereafter on a bimonthly basis in November 2005, and in January, March, May and July, 2006.

Dated: _____     _____

UNITED STATES DISTRICT COURT


THE FOLLOWING PARTIES CONSENT TO THE ENTRY OF THIS SETTLEMENT AGREEMENT:

FOR THE UNITED STATES:

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment and Natural Resources Division

_____
HENRY S. FRIEDMAN, Senior Attorney
JEROME MACLAUGHLIN, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5268

H.S. GARCIA
United States Attorney

District of Puerto Rico

ISABEL MUNOZ
Assistant United States Attorney
USDC No. 128302
District of Puerto Rico
Federal Building, Room 452
Chardon Avenue
Hato Rey, Puerto Rico  00918
(787) 766-5656

OF COUNSEL:

ERIC SCHAAF, Regional Counsel
NAOMI SHAPIRO, Assistant Regional Counsel
LOURDES RODRIGUEZ, Assistant Regional Counsel
U.S. Environmental Protection Agency Region II
290 Broadway, 16th Floor
New York, New York  10007
(212) 637-3221

[Page Intentionally Left Blank]

Date: 9/9/05

_____
ALAN J. STEINBERG, Regional Administrator

Date: 9/9/05

_____
ERIC SCHAAF, Regional Counsel

U.S. Environmental Protection Agency Region II
290 Broadway, 16th Floor
New York, New York 10007
(212) 637-3221

FOR THE DEFENDANTS:

_____
TROPICAL FRUIT S.E.
AVSHALOM LUBIN
PRESIDENT AND MANAGER
OF THE FARM
PO BOX 560572
GUAYANILLA P.R. 00656-0572
(787) 835-1950

Date: 9/10/05

H:\910.443\MOTIONS\056Settlelment Agreement.wpd

UNIVERSIDAD DE PUERTO RICO
RECINTO DE MAYAGÜEZ
COLEGIO DE CIENCIAS AGRICOLAS

**SERVICIO DE EXTENSION AGRICOLA**

## CARTA CIRCULAR

## RECOMENDACIONES PARA EL CONTROL DE LA SIGATOKA NEGRA

Por: Agro. Manuel Díaz Rivera
Especialista en Farináceos
Servicio de Extensión Agrícola

Una vez detectada la enfermedad en Puerto Rico, el agricultor realizará las siguientes prácticas:

1. Mantener un programa eficiente de selección de semilla de guineo y plátano y abonamiento para obtener plantas más saludables.

2. Deshoje frecuente de las hojas con más de un 50% del tejido necrótico y despunte de aquellas con síntomas de un 5 a 15% en la punta de las hojas.

3. Una vez realizado el deshoje (despunte) el agricultor acumulará las hojas en montículos con el envés hacia abajo con el fin de evitar el aumento del inóculo.

4. Alternar el uso de fungicidas de contacto con sistémico para evitar la creación de resistencia por parte del hongo hacia estos plaguicidas.

5. La utilización de aceites agrícolas solo y en combinación con fungicidas ha sido una práctica que ha funcionado en Latinoamérica.

6. En caso de detección temprana de la enfermedad (hojas 2, 3 y 4), se debe aplicar un fungicida de contacto registrado en Puerto Rico, en tres semanas consecutivas para evitar un aumento en el inóculo y poder cubrir bien las hojas nuevas.

7. En áreas llanas, las siembras en hileras sencillas, dejando un espacio de 14 pies cada 8 hileras, facilitará una mejor aspersión con equipo de aspersión adecuado. Ejemplo: el uso de la "ganza" en la zona sur.

8. El cultivo de plátanos de forma anual o de un solo cosecho, sería una buena práctica para reducir la fuente de inóculo.

9. La eliminación de siembras viejas dejadas como fuente de semillas sería una práctica recomendable.

10. El control efectivo de malezas evita la creación de un microclima que favorezca el desarrollo del hongo.



Appendix A

La Universidad de Puerto Rico en cooperación con el Departamento de Agricultura de los E.E.U.U.

### Nombres comerciales y dosis lde fungicidas para uso en Plátanos y Guineos en PR

| De contacto | Dosis de aplicación |
|---|---|
| Dithane M45 | Dosis de 2 a 3 libras por cuerda en aplicaciones con intervalos de cada 14 a 21 días en suficiente volumen de agua para cubrir el follaje. No aplique más de 30 libras por cuerda por ciclo del cultivo. |
| Dithane F45 | Dosis de 1.6 a 2 cuartillos por cuerda en aplicaciones con intervalos de cada 14 a 21 días en suficiente volumen de agua para cubrir el follaje. No aplique más de 24 cuartillos por cuerda por ciclo de producción. |
| Champion Wettable Powder | Dosis de 2 libras por cuerda. Apliquelo en un volumen de agua suficiente para cubrir todo el follaje. Durante la época lluviosa, apliquelo a intervalos de 14 días y durante la seca, cada 21 días. Para mayor efectividad, apliquelo en emulsión a razón de ½ galón de aceite de huerta por cuerda y añada un adherente. Agite continuamente la emulsión. |
| Kocide 101 | Dosis de 2 libras por cuerda. Apliquelo en un volumen de agua suficiente para cubrir todo el follaje. Durante la época lluviosa, apliquelo a intervalos de cada 14 días y durante la seca, cada 21 días. Para mayor efectividad, apliquelo en emulsión a razón de ½ galón de aceite de huerta por cuerda y añada un adherente. Agite continuamente la emulsión. |
| Kocide 2000 | Dosis de 2 libras por cuerda. Apliquelo en un volumen de agua suficiente para cubrir todo el follaje. Durante la época lluviosa, apliquelo a intervalos de 14 días y durante la seca, cada 21 días. Para mayor efectividad, apliquelo en emulsión a razón de ½ galón de aceite de huerta por cuerda y añada un adherente. Agite continuamente la emulsión. |

| | |
|---|---|
| ManKocide | Dosis de 2.5 libras por cuerda hasta un máximo de 160 libras por ciclo del cultivo. Aplique cuando aparezcan los primeros sintomas en las hojas y repita a intervalos de 14 a 21 días si es necesario. Use suficiente agua para tener buena cobertura. |
| Manex | Dosis de 1.6 a 2.4 cuartillos por cuerda hasta un máximo de 24 cuartillos por cultivo. Aplique cuando aparezcan los primeros sintomas y repita si es necesario a intervalos de 14 a 21 días. Puede aplicar hasta un día antes de la cosecha. |
| Manzate 75DF | Dosis de 2 a 3 libras por cuerda en aplicaciones con intervalos de cada 14 a 21 días en suficiente volumen de agua para cubrir el follaje. No aplique más de 30 libras por cuerda por ciclo del cultivo. |
| Penncozeb 75DF | Aplique de 2 a 3 libras por cuerda. Efectúe la primera aplicación cuando se observen los primeros sintomas de la enfermedad y repita si es necesario cada 14 a 21 días. No aplique más de 32 libras de producto comercial por ciclo del cultivo. Puede aplicar hasta un día antes de la cosecha. |
| Oxidate | Aplique hasta 1 galón de Oxidate en 100 galones de agua. Para una acción curativa asperje por tres días consecutivos y continue los tratamientos a intervalos de 5 a 7 días. Para una aplicación preventiva aplique los primeros tres tratamientos a intervalos de 5 días. |
| Fungicidas Sistémicos | Dosis |
| Elite 45 DF | Aplique de 3.2 onzas por cuerda diluido en un mínimo de 20 galones de agua. Repita la aplicación cada 14 días si es necesario. Puede mezclarse hasta con ½ galón de aceite por cuerda. |
| Abound | Aplique de 5.5 a 8.3 onzas por cuerda a intervalos de 12 a 14 días. No aplique más de 2.08 cuartillos por cuerda por ciclo del cultivo. |
| Otros | |
| BVA-15 Banana Spray Oil | Aplique de 1 a 1½ galones por cuerda a intervalos de 14 a 21 días. No aplique más de 22 galones por cuerda por año. |
| Serenle (Bacillus subtillus) Fungicida biológico | Aplique de ½ a 1 galón por cuerda |